# US DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Paul R. F. Schumacher, *Plaintiff.* <br> v. <br> Capital Advance Solutions LLC <br> Charles Betta <br> Dan Logan, *Defendants.* | Case No. 4:18-CV-00436 |

# MEMORANDUM OF FACTS AND LAW

## I. Introduction

Defendants Betta and Logan have asserted that this court does not have personal jurisdiction over them in this case. As elements of this defense, they state that they personally have insufficient connection to Texas for the venue to be appropriate, and that their actions in contravention of Texas and Federal law that affected plaintiff only give plaintiff cause of action against the company, not against them personally.

This court granted Plaintiff a limited discovery window to ascertain facts that would establish otherwise. This memorandum presents the facts and law that plaintiff believes addresses their claims and arguments.

## II. Table of Contents

For clarity, this memorandum is sectioned as follows:

- Vicarious Liability on page 3
- Negligence on page 4

- Individual Responsibility on page 6
- Venue on page 8
- Facts and Conclusion Regarding Defendant Betta on page 8
- Facts and Conclusion Regarding Defendant Logan on page 9

### III. Summary of Discovery

During this limited period of discovery, plaintiff submitted questions to both individual defendants. Amongst their answers (relevant excerpts included as Attachments A and B), they stated:

- Mr. Betta was solely responsible for the marketing efforts, not Mr. Logan.
- The company employed the firms Channel Growth and First Pacific Marketing during the period in question, despite previous claims to plaintiff that they and the company did not employ marketing firms to make telephone calls on their behalf.
- Mr. Betta is an owner of the company.
- Mr. Betta was aware of several lawsuits against his company predating the calls in question of a similar nature (and as was previously known, was involved in at least one of them as a deposed witness).
- Neither Mr. Betta nor Mr. Logan took any follow-up action with their marketing firms after the conversation with Plaintiff prior to the 10th logged call to plaintiff.

Plaintiff then attempted to follow up with their marketing firms. Channel Growth responded (relevant responses as Attachment C), and divulged that they outsourced the calls to third parties in China, and that the outsourced firm no longer exists, and they are unable to provide any further information. They also confirmed plaintiff's contention that no oversight was provided by CAS or the individual defendants, including no contractual requirement to follow the TCPA or the Telemarketing rule. Specifically, Channel Growth's representative stated that they were unaware of any contract between the two companies, including one specifying TCPA compliance as claimed by defendants.

First Pacific Marketing was unreachable, as they have gone out of business in the interim between Plaintiff investigating these violations and defendants finally divulging the name of the marketing firm that they employed to make them. Plaintiff made several attempts to contact FRCM at their registered agent and sought a motion to compel. After that motion was granted, the registered agent responded to plaintiff's first inquiry by returning it unopened nearly a month after it had been sent, as "unauthorized to respond". Further attempts to track down and contact the owner and operator, Lindsay Johnson at any of the addresses listed for her or the company failed. FPM is no longer active in California as a company.

## IV. Vicarious Liability

The individual defendants have repeated in their various statements and motions that they personally did not make calls and that the company did not directly call plaintiff. However, the FCC has ruled and case law has established that individuals and companies are responsible for the violations of their telemarketers. It is enough that the calls were made on the behalf of the defendants or at their request. See, for example, *FTC et al. vs All Us Marketing et al.* (6:15CV1016-0RL-28GJK) which repeatedly states "Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls" that violate the relevant sections of the TCPA and the FTC and FCC rules implementing same. In this case, the defendants were found liable of violations even if they individually or as a company didn't directly place the calls, but rather contracted with a third party to do so or otherwise requested that they be made.

Similarly, "in Gomez v. Campbell-Ewald Co., 768 F.3d 871 (9th Cir. 2014), the plaintiff Gomez alleged that the Campbell-Ewald Company instructed or allowed a third-party vendor to send unsolicited text messages on behalf of the United States Navy –- with whom Campbell-Ewald had a marketing contract. Gomez, 768 F.3d at 873. Campbell had argued that it could not be held liable for the potential TCPA since it had outsourced the dialing and did not actually make any calls on behalf of its client. Id. at 877. The Ninth Circuit

rejected this argument and ruled that under the federal common law, and giving Chevron deference to the 2013 TCPA Order, the TCPA did allow for vicarious liability. Id. at 878."[1]

In addition, the Telemarketing Rule states (16 CFR Part 310.3(b) ) ''Assisting and facilitating. It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.''

In short, the defendants are liable for their marketers' violations if those marketers were acting on their behalf or at their request and for avoiding knowing or addressing those violations when brought to their attention. They are further liable for participating in the fraudulent claim that they employed no such marketers and that no calls were being made on the company's behalf.

## V. Negligence

Despite being well aware of the pitfalls of telemarketing and the existence of regulations of same, defendants failed to exercise due care in continuing to telemarket, resulting in the violations perpetrated on plaintiff on their behalf.

There are various steps that can be taken to protect a company or individual from vicarious liability spelled out by the telemarketing rule. Along with other requirements, they must have a TCPA compliance procedure, select a reputable marketing firm, monitor and verify compliance with the telemarketing rule and their compliance procedures, and must follow up on complaints of violations of those rules.

Defendants failed in their duty to do any of these things, as detailed below, and thus cannot claim the safe harbor provision of the telemarketing rule in avoiding responsibility for the actions of their marketing firms.

---

[1] Quoted from http://www.ellislawgrp.com/article15tcpaupdate.html

### A. Failure to Vet Marketing Firm

Per the Telemarketing rule, a reputable marketing firm must be chosen to shield defendants from vicarious liability. However, First Pacific Marketing, employed by defendants does not fit this criteria, as at the time, they were subject to an action by the Missouri state AG for exactly the same type of offenses being litigated here. In Koster v. First Pacific Marketing (2014) the Missouri state attorney general charged First Pacific Marketing with making unsolicited robocalls to numbers on the national do not call registry, as well as ignoring attempts by recipients to opt out of those calls. This was well before First Pacific Marketing made calls on the behalf of defendants to plaintiff in 2015 and 2016. They had ample time to change their provider in response to the disrepute of their chosen vendor, and they did not. This negligence on their part resulted in exactly the same types of violations being perpetuated onto Plaintiff on their behalf.

### B. Failure to Monitor or Verify Compliance

As noted in the responses from Channel Growth, defendants did not, as they claim in their responses, require Channel Growth or its operators to sign a policy of compliance with FCC rules on telemarketing. Also as noted in the responses from Channel Growth, defendants did not monitor or verify compliance with those rules in any way.

During the phone call from Plaintiff with the individual defendants, they were asked for a copy of their telemarketing or privacy policy, and defendants scoffed at the request.

The defendants attempted to claim in their responses that they required each telemarketer to sign a contract agreeing to follow the TCPA rules. However, their contractor, Channel Growth, denies any such contract. In addition, the supposed 'example' contract they provided plaintiff has no names, or dates, just a list of terms and an indecipherable initial, giving it no evidentiary value whatsoever.

### C. Failure to Address Complaints

Subsequent to plaintiff's complaint about the abusive and illegal practices in the marketing calls on their behalf, defendants did not follow up with their marketing firms to address those issues. As noted in the responses from Channel Growth, defendants did not communicate with Channel Growth about any complaints or other problems arising from their telemarketing subsequent to plaintiff's complaint to them personally.

## VI. Individual Responsibility

In addition to the vicarious liability for the acts of the marketing firms, the defendants are responsible for their own actions. Mr. Logan argues that he is not personally liable for his actions as an employee of the company. Mr. Betta simultaneously argues that he is not personally liable for his actions as an employee of the company on its behalf and that as an owner, he is not personally liable for the actions of his employees on his company's behalf.

### A. Individual Responsibility of Employee

In regards to employee responsibility for actions, let us examine some parallel examples. If a delivery driver breaks the speed limit, they are issued a ticket, even though their action was taken for the benefit of the company. The company is not responsible for the driver violating the law with their unlawful actions. Similarly, a corporate security officer breaking into a competitor's establishment would still be liable for burglary and civilly liable for damages caused by the break-in, even if their sole purpose in doing so was to benefit their employer. Working for a company does not absolve the individual of their responsibility to follow the law.

In claiming to plaintiff that their company employed no telemarketing firms and made no marketing calls, the individual defendants committed fraud in aid of the unlawful telemarketing. In addition to the fraud itself, this also violated 16 CFR Part 310.3(b) by assisting the telemarketing firm in making unlawful calls. Had defendants provided Plaintiff with the correct information regarding the identity of First Pacific Marketing as requested,

Plaintiff could have pursued them for these violations before that company vanished into thin air. Instead, it was only now during this limited discovery that that company's identity and existence were uncovered, much too late to do anything about them. They have since gone under, presumably due to the Missouri lawsuit levelled against them for these same violations in their telemarketing calls.

Mr. Betta's admitted role in choosing and shaping the marketing go much further than this, of course. He directly created the marketing program that resulted in the unlawful calls being made to plaintiff and the subsequent violations perpetrated upon him. He cannot now claim 'well, that's the company's problem that I caused these violations to occur, you have no claim on me'. He is liable for the results of his actions.

### B. Individual Responsibility of Owner

Mr. Betta also claims that as owner of the company, he's not liable for the actions of his employees. If he were not a participant, he would almost certainly have a point. An owner that hires employees and sets a business strategy in good faith and later finds that his employees have been violating the law would be protected by the limited liability of the company. The company would still be liable but the owner would not.

However, here, we have an entirely different animal. The employee whose actions Mr. Betta is primarily attempting to shield himself from is Mr. Betta. He participated in the crime and the subsequent fraudulent attempt to cover it up.

Again, by analogy, a burglar who steals from me would be liable for his actions, but Mr. Betta claims that if that same burglar were to form an LLC, hire himself as chief burglar, and then steal from me, they would not be liable for damages as either an employee nor as an owner, but only the completely assetless company would be liable! This is a naked attempt to shield himself from the liability he incurred by his illegitimate marketing scheme through his formation papers. It does not hold up to scrutiny.

Mr. Betta cannot use his company as a shield to protect himself from himself when he participates in an unlawful act.

## VII. Venue

Inherent in the claims of jurisdiction is a complaint about choice of venue. It is obvious that the defendants aren't claiming that the federal courts have no jurisdiction on them, but rather that they're not subject to this court's jurisdiction in these matters, as they're residents of New Jersey. Fortunately, Texas has a long-arm statute that deals with this issue. Texas asserts jurisdiction not only over individuals and companies that do business in Texas, but also in any case where the tort was partially committed in Texas. Not only did the company and its marketing have sufficient ties to Texas, as admitted by defendants in their responses, but they personally participated in a tort that partially took place in Texas.

During plaintiff's phone call to complain to the defendants, Plaintiff was in and a resident of Texas, and defendants were both present on the call. When they denied that the firm made telemarketing calls or employed others to do so on their behalf, they committed an act of fraud in support of the unlawful acts taken by their telemarketers. This fraud was committed partially in Texas because the misrepresentation was made by telephone to plaintiff while he was in Texas. Therefore, by the Texas Civil Practices and Remedies Code section 17.042(2), they are subject to the laws and jurisdiction of Texas. "In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: ... (2) commits a tort in whole or in part in this state;"

This subjects defendants to the jurisdiction of this state for their violations of the Texas telemarketing laws in regards to calling or causing to be called a resident of Texas on the national DNC registry, as well as their fraud in support of that unlawful act. As the federal offenses and claims arising therefrom are concomitant, this court is the appropriate court of jurisdiction for them as well.

## VIII. Facts and Conclusions Regarding Defendant Betta

Defendant Betta owns the company, chooses its marketing strategies, is involved in crafting the marketing message, chooses the telemarketing firms, and profits from their

1 activities. He has claimed that he cannot be personally held liable for the unlawful acts perpetrated by him on his company's behalf.

This argument fails in two ways: First, it attempts to deflect responsibility for his personal actions to his company, even though the TCPA makes individuals liable as well as their companies for their actions. Second, it attempts to invoke the corporate veil for a company which he both owns and operates. In short, he is stating that he as owner is not liable for what he as employee did on his company's behalf in order to benefit himself as owner. This is not an appropriate use of the corporate veil, as argued above.

Mr. Betta is entirely complicit in this matter, and both directly responsible for his own actions and vicariously responsible for the actions by the marketers he employed on his behalf. This court is the appropriate court of jurisdiction for this matter, as the tort was partially committed in the State of Texas.

### IX.  Facts and Conclusions Regarding Defendant Logan

The liability of defendant Logan is much less clear cut. He is arguably not acting on his own behalf, and only on the company's behalf. However, he still personally violated the law when he participated in the followup phone calls with plaintiff, to wit: denying that the company used telemarketers and failing to address any of the complaints with the company's marketing.

Both defendants have claimed that Mr. Logan had nothing to do with the marketing of the company, but Plaintiff counters that he was referred to Mr. Logan as the responsible party by the floor salesfolk at CAS. Furthermore, when asked to speak with company representatives regarding the telemarketing issues, both Mr. Logan and Mr. Betta actively participated in the call. It is hard to reconcile the defendants' claims that Mr. Logan was uninvolved with the other employees' statements to Plaintiff that he was the responsible manager and his involvement in the call with Plaintiff where he personally participated in the fraudulent claim that no telemarketers were employed by the firm.

Plaintiff contends that Mr. Logan is at least responsible for his personal act of misrepresentation, even were the defendants' claims true that participated in no other way in the marketing of the firm. This court is the appropriate court of jurisdiction for this matter, as the tort was partially committed in the State of Texas.

This issue will only be resolvable factually if defendants produce the requested recordings of the conversation that their system claims are made of every call, and/or if former employees are called upon to testify as to Mr. Logan's involvement. Neither of these were able to be completed in the limited discovery period.

Dated: July 22, 2019

_____
Paul R. F. Schumacher
Plaintiff (Pro Se)