# Attachment A

```
Excerpts from First Responses from Defendants
```

unreasonable burden and expense. [Objection on the grounds of "Availability."]

H. Defendant objects to each interrogatory to the extent it seeks information that is confidential, trade secret, subject to privacy rights or otherwise proprietary in nature, the disclosure of which would or could harm defendant. [Objection on the grounds of "Proprietary Information."]

I. Defendant objects to the manner in which plaintiff assorts and labels the interrogatory sections. The defendant further objects to the manner in which the plaintiff defines the terms culpability, benefit and jurisdiction. Defendant does not concede he is culpable or received a benefit as defined by the plaintiff or under the law applicable to the issues in this case. Furthermore, defendant maintains he is not subject to jurisdiction of this court.

## DEFENDANT CHARLES BETTA'S ANSWERS TO INTERROGATORIES

I.

1. Were you aware that a prerecorded message was being used to generate leads or telemarket either by your company or other associates, or on your behalf?

   **ANSWER:**

   **I am not aware of any prerecorded messages on my behalf. I am aware that CAS selected third-party lead generation specialists to forward to CAS business to business leads on an ala carte basis provided that they followed TCPA and state regulations regarding telemarking. CAS did not control the vendors or determine what businesses they called. The vendors were specifically instructed to comply with all aspects of the TCPA and state regulations regarding telemarketing. Vendors were required to sign an agreement to comply with federal and state regulations. See attached.**

2. List the venue, case number, and resolution of each federal lawsuit brought against you or the company since 2010 until 2015 for telemarketing violations:

   **ANSWER:**

   **The defendant objects to this request as overbroad and beyond the scope of jurisdictional discovery. The fact that a lawsuit was filed against the defendants and the disposition of that lawsuit does not address the issue of whether this court has personal jurisdiction over the defendants in this case. Without waving the objection, the defendant is aware that in 2015 CAS was sued in:**

   ***Ryan Alcorn v. Capital Advance Solutions* US District Court for the Southern District of Texas 15-cv-02369. A default judgment was entered. The matter was transferred to US District Court in New Jersey 1:7 MC-8 NLH. The matter was ultimately settled without any admission of wrongdoing. I was not a party to this lawsuit.**

3. After lawsuits were filed, which served beyond any doubt to make you aware of the rules you had been violating, what steps were taken or procedures implemented to prevent violations of those rules in the future, including: failing to screen out cell phones, use of

prerecorded voice, the use of an ATDS as defined by the FCC, or calling numbers on the national or state do not call registries:

ANSWER:

**Defendant objects to this question as it assumes facts not established and states legal conclusions. Without waiving the objection, I deny that I violated any rules. In order to conduct business with CAS, an independent vendor was instructed and contracted to comply with TCPA and state regulations regarding telemarketing. CAS was assured by the vendor that it would take the necessary measures to insure compliance, including proper screening of potential leads.**

4. Describe how your marketing selection and preparation process has changed from or is essentially the same as that described in the *Rinky Dink* deposition (previously submitted by this court), which details Mr. Betta's personal involvement which state target selection and a lack of compliance procedures.

ANSWER:

**CAS stopped using the vendor Voiceblaze. CAS switched to using outside independent vendors that assured CAS they would comply with TCPA and state regulations concerning telemarketing. Furthermore, the vendor was required to contact only businesses. After establishing a lead that was obtained in compliance with the TCPA and state regulations, the vendor would forward the call to CAS.**

5. Has Mr. Betta or Mr. Logan at any time represented Mr. Logan as being responsible for legal compliance, telemarketing issues, or referred him as a legal officer for the company?

ANSWER:

**Mr. Logan was the CFO for CAS. I have not represented him to be anything other than this.**

6. What role(s) did Mr. Betta fill in the company during 2015-2016?

ANSWER:

**I was President of the Company.**

7. What role(s) did Mr. Logan fill in the company during 2015-2016?

ANSWER:

>   Mr. Logan was employed as the CFO. As CFO he was responsible for financial well-being of the company by forecasting finances and budgets. He oversaw accounting, finance and taxation issues. He planned the financial future of the company.

**II.**

1. List all of the above suits that the company failed to respond to, failed to appear for, or which were allowed to fall into default judgment.

   **ANSWER:**

   **Defendant objects to this interrogatory as being overbroad and not calculated to elicit information regarding personal jurisdiction and whether the corporate veil was breached. Without waiving the objection, I am aware that CAS was sued for TCPA violations. I don't know all of the cases that CAS failed to appear in or defaulted. The company defended some TCPA claims and settled others. I recall that CAS defaulted in the *Redman* and *Alcon* cases. The Alcorn case was eventually resolved by settlement. I am also aware of *Abante Rooter and Plumbing Inc. v. CAS* 4-18-cv-01762 in California. CAS has not appeared in that matter. I don't believe a judgment has been entered. I am aware that a default was entered in the case of *Jackson v. CAS* DJ-026297-17 in New Jersey. This matter was settled.**

2. List all sanctions levied against you or the company for the company failing to respond to subpoenas or judgments, as well as any outstanding judgments against you or the company which have not been satisfied.

   **ANSWER:**

   **I have not received any sanctions. It is my understanding that CAS was required to pay attorney fees associated with opposing counsel's efforts to obtain discovery via subpoena in the *Redman* matter. A judgment was entered for some of the counsel fees. I am unable to recall any other judgments related to TCPA matters that have not been satisfied.**

3. Did. Mr. Betta own a percentage of the company or its profits during 2015, 2016, or onward?

   **ANSWER:**

   **Yes.**

3. How many contacts (as above) were made by other associates to Texas area phone numbers or with Texas addresses during the years 2015-2016? (If more than a hundred, an estimate to the nearest order of magnitude will suffice).

   **ANSWER:**

   **I don't know the answer to this question, nor do I possess documents that would enable me to provide this information.**

4. Your company's business and marketing have been previously described by Mr. Betta as being in all 50 states. Had that changed as of 2015 or 2016 to specifically exclude Texas?

   **ANSWER:**

   **No.**

5. Did you specifically include or exclude (or neither) the state of Texas in your marketing area/strategy either internally or for your lead generation or telemarketing firms?

   **ANSWER:**

   **CAS did not specifically exclude the State of Texas. However, CAS engaged in several different methods of marketing, including: mailers, referrals, internet and radio. A vendor that provided CAS with a lead through telemarketing was required to do so in accordance with TCPA and state regulations.**

6. List every state in which your company registered as a business with telemarketing, as required by Texas, Florida and others.

   To enable us to serve subpoenas to verify or refute your claims about no business in Texas:

   1. State the name and address of each lead generation or telemarketing firm that made calls on the company's behalf or handed off leads to the company via telephone during the period 2015-2016.
   2. State the name and address of each telephone service provider that your company used for outgoing calls during the period 2015-2016 and the account number for each account.
   3. If any other method was used to make calls without a specific provider (such as VOIP code), describe the nature of the method and whether it was internally or externally developed, and by whom.

ANSWER:

I don't know the answer to this question. The third-party vendor was required to insure that all leads forwarded to CAS were done in accordance with TCPA and state regulations.

Texas

1. CAS hired third party lead generation specialists to forward it business to business leads on an ala carte basis provided that they followed the TCPA and local state rules regarding telemarketing. I am aware of two such vendors, Channel Growth located at 1525 Lakeville Dr. Ste 121 Houston, TX 77339; and First Pacific Marketing located at 1024 Bayside Dr. Suite 403 New Port Beach CA 92660.

2. CAS' telephone carrier was the American Telephone Company with a mailing address of PO Box 1465. CAS did not solicit business from the phoneline associated with this account. CAS was referred calls from third party vendors, Channel Growth and Pacific Marketing. CAS does not possess the phone records for these third-party vendors.

3. I don't know the answer to this question.

# Attachment B

Excerpts from Second Responses from Defendants

delineated in the Rules of Court, which prerequisites have not been satisfied. [Objection on the grounds of "Privilege."]

E.    Defendant objects to each interrogatory to the extent that it is vague, ambiguous or otherwise lacks sufficient precision or particularity to permit formulation of a response. [Objection on the grounds of "Vagueness."]

F.    Defendant objects to each interrogatory to the extent that it requires defendant to obtain information from or with respect to persons or entities over whom defendant has no control. [Objection on the grounds of "Control."]

G.    Defendant objects to each interrogatory to the extent that it seeks disclosure of information already known or available to plaintiff or documentation in plaintiff's possession which may be obtained more readily by plaintiff and without subjecting Defendant to unreasonable burden and expense. [Objection on the grounds of "Availability."]

H.    Defendant objects to each interrogatory to the extent it seeks information that is confidential, trade secret, subject to privacy rights or otherwise proprietary in nature, the disclosure of which would or could harm defendant. [Objection on the grounds of "Proprietary Information."]

I.    Defendant objects to the manner in which plaintiff assorts and labels the interrogatory sections. The defendant further objects to the manner in which the plaintiff defines the terms culpability, benefit and jurisdiction. Defendant does not concede he is culpable or received a benefit as defined by the plaintiff or under the law applicable to the issues in this case. Furthermore, defendant maintains he is not subject to jurisdiction of this court.

## DEFENDANT CHARLES BETTA'S ANSWERS TO PLAINTIFF'S SECOND DOCUMENT REQUEST AND INTERROGATORIES

**I.**

1.    In your first set of answers, you claimed that vendors were instructed and required to comply with all federal and state laws regarding telemarketing. What steps, if any, were taken to vet the companies for a history of such violations, or for ongoing violations they had been committing?

    **ANSWER:**

Objection. Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court may retain personal jurisdiction. Without waiving the objection, the defendant does not concede it had an obligation to "vet" a vendor. The vendors represented themselves as marketing experts and assured compliance with the TCPA as well as applicable state laws regarding marketing. The vendors signed an agreement assuring compliance. I was not aware of any violations. Furthermore, I did not preside over the vendor selection. This decision was delegated to CAS' Marketing Manager. The vendor was to provide leads from qualified businesses. The vendor determined what businesses to direct its marketing efforts to. CAS relied on the vendor to perform it services in accordance with state and local laws.

2.      Additionally, what processes, if any, were in place to audit and verify those company's compliance in their marketing or lead generation on behalf of CAS?

**ANSWER:**

Objection. Whether the defendant took any measures to audit a third-party vendor has nothing to do with whether the whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction.

3.      Were you aware that Pacific Marketing was sued by Missouri Attorney General for violating the state telemarketing laws and they were prohibited by a judgment in that case from marketing in Missouri prior to September 2015 (the date of the first known call to Plaintiff)?

**ANSWER:**

Objection. Whether the defendant was aware that Pacific Marketing was sued has nothing to do with has nothing to do with whether the whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. Furthermore, I am unaware of any phone call made on my behalf or on the behalf of CAS to the plaintiff. Without waiving this objection, the answer is no.

4.      Were you aware that Pacific Marketing was the subject of a class action suit in January 2016 for violating federal telemarketing laws?

**ANSWER:**

Objection. Whether the defendant was aware that Pacific Marketing was sued has nothing to do with whether the whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. Without waiving this objection, the answer is no.

5.  If and when you became aware of these lawsuits, did you discontinue using that firm for your lead generation at that time or were they still actively marketing on your company's behalf when plaintiff received the calls in violation of the national Do Not Call Registry (among the other violations alleged)?

**ANSWER:**

Objection. Whether the defendant was aware that Pacific Marketing was sued has nothing to do with whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. Without waiving the objection, I was unaware of any lawsuits. Furthermore, I emphatically deny that I called the plaintiff, or that anyone else called the plaintiff on my behalf or at my direction. I further deny any knowledge of anyone calling the plaintiff on behalf of CAS.

6.  After plaintiff initially contacted you and described to Mr. Betta and Mr. Logan the nature of the violations in the calls he had received, what steps, if any, did you take to investigate and correct those alleged violations by the firm's telemarketers?

**ANSWER:**

Objection. This interrogatory is predicated on event that did not occur. I emphatically deny that I ever spoke to the plaintiff.

7.  As plaintiff received further unlawful call on your company's behalf after the above-mentioned conversation, what processes were breached, if any, that had been put in place since the complaint was given to you by plaintiff?

**ANSWER:**

Objection. This interrogatory assert legal conclusions and alleges facts that have not been established. Without waiving the objection, I emphatically deny ever speaking with the plaintiff. I further deny denies that any unlawful calls were made to this plaintiff.

8.  Defendants state that Mr. Logan was not represented as anything other than CFO and had no responsibility for telemarketing practices. Why, then, was Mr. Logan included in the phone call with Mr. Betta for Plaintiff's complaint about the telemarketing violations, and why was Plaintiff subsequently referred (and transferred) to Mr. Logan by CAS employees when he followed up with an additional complaint about telemarketing?

P. 6

**ANSWER:**

Objection. This interrogatory alleges facts that have not been established. Without waiving the objection, I emphatically deny that any phone conversation took place between myself and the plaintiff. Upon information and belief, the plaintiff never spoke with Dan Logan.

**II.**

1.   In the first set of questions, you were asked how many contacts were made on you and your company's behalf by your contractors to Texas area phone numbers. Your answer stated that you did not call anyone. Your answer was incomplete: Based on the reports that your vendors gave you, how many calls did they make to Texas area phone number while generating leads for your company?

**ANSWER:**

The defendant objects to this interrogatory as irrelevant and not calculated to establish jurisdiction over the defendant. The defendant denies that the Court has jurisdiction over the defendant, a New Jersey resident, based on alleged telephone calls to plaintiff from an independent vendor, that was not a Texas resident. Without waiving the objection, as previously explained, the vendor placed calls in compliance with the TCPA and state laws. The vendor did not call anyone on my behalf. I, nor anyone else that I am aware of, ever called the plaintiff. The vendor did not provide me or CAS with a report for those it called. This defendant does not know how many calls the vendor made.

2.   In your first set of answers, you indicated that you do not have documents which would enable you to answer the question as to how many clients you had in Texas during the years in question. Are you contending that your client list and any backups thereof were lost or destroyed in the intervening time between then and now?

**ANSWER:**

No.

3.   If so, when were such records destroyed and for what purpose other than spoliation of evidence for the various lawsuits active against your company during this period?

### B.   Follow Up Requests

Additionally, defendants attached a document purporting to be a compliance contract with their telemarketers. However, it does not indicate what company it is for, and can at most encompass one of the two companies specified s doing lead generation on the company's behalf.

Therefore, as a follow up, Plaintiff requests

2.   Any other contracts or documentation provided to you or your company by the aforementioned lead generation firms regarding TCPA Compliance.

### ANSWER:

The compliance agreement was signed by a representative of Pacific Marketing. Channel Growth also executed the same agreement. The defendant does not have a copy.

3.   Any documentation you will rely on to validate claims that the firms were vetted for compliance before and while using them.

### ANSWER:

Objection. Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court has personal jurisdiction over the defendant because of an alleged breach of the corporate veil. Without waiving the objection, the vendors assured CAS that they were taking measure and using technology to insure compliance.

4.   Any documentation you will rely on to validate claims that you addressed complaints of illegal telemarketing with the lead generation firms.

### ANSWER:

Objection. Whether the defendant has any documents to validate that it took measures to address complaints has nothing to do with whether defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. The defendant further objects to this question in that it presupposes facts that have not been established. Defendant further objects to the interrogatory as it impermissibly alleges a legal conclusion that has not been established. The defendant further object to the term "illegal telemarketing" as vague, overbroad and

# Attachment C

Subpoena to Product Documents Response

Item 1: Channel Growth did not make any calls to 979 575 0107. Channel Growth acted as a broker in selling leads to Capital Advance Solutions that were generated by a 3rd party. From Channel Growth's internal records and lead lists, we have no record of 979 575 0107 being called by a 3rd party either. This 3rd party is overseas and is no longer in business. We were not able to get a hold of any representative who formerly worked for this 3rd party to acquire any additional documents or records.

Item 2: Channel Growth did not make any calls to the 979 area code. Channel Growth acted as a broker in selling leads to Capital Advance Solutions that were generated by a 3rd party. From Channel Growth's internal records and lead lists, we have recorded 4 calls/leads that were made to the 979 area code by a 3rd party. None of these calls were to 979 575 0107. The 3rd party is overseas and is no longer in business. We were not able to get a hold of any representative who formerly worked for this 3rd party to acquire any additional documents records.

Item 3: We passed on 2,400 leads to Capital Advance Solutions in 2015-2016. Capital advance solutions received an excel worksheet each week with the leads.

Item 4: We passed on 500 leads to Capital Advance Solutions in 2015-2016 from Texas.

Item 5: I can not locate any contracts between Channel Growth and Capital Advance Solutions. I do not know that there were ever any signed agreements between Channel Growth and Capital Advance Solutions. Capital Advance Solutions was aware of the TCPA compliance guidelines that we had in place for our vendors.

Item 6: Channel Growth requires all companies who generate leads for it to comply with TCPA guidelines. The guidelines they are required to follow are included on the following page.

Item 7: There has been absolutely no contact (written or otherwise) between Channel Growth and any current or former employees/representatives of Capital Advance Solutions in 2019. I have no records of communication with Capital Advance Solutions regarding compliance in March/April of 2016.