IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Paul R. F. Schumacher,

          Plaintiff, pro se,

    v.

Capital Advance Solutions LLC, Charles
Betta, and Dan Logan,

          Defendants.

Civil Action No. 4:18-cv-00436

Magistrate Nancy K. Johnson

## DEFENDANTS CHARLES BETTA AND DAN LOGAN'S MOTION TO DISMISS AND MEMORANDUM OF LAW

Kent & McBride, P.C.
Christopher D. Devanny, Esq. (3719)
*Attorneys for Defendants,*
*Charles Betta and Dan Logan*
One Arin Park
1715 Highway 35, Suite 305
Middletown, New Jersey 07748
Phone: 732-326-1711
Email: cdevanny@kentmcbride.com

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that on August 9, 2019, a true and exact copy of this Motion was served upon the following individuals through the Court's electronic filing system:

>       Paul R. F. Schumacher
>       1512 Oakview Street
>       Bryan, Texas 77802
>       Plaintiff, Pro Se

KENT & MCBRIDE, P.C.

By:  _____
     Christopher D. Devanny, Esq. (3719)
     *Attorney for Defendants,*
     *Charles Betta and Dan Logan*
     One Arin Park
     1715 Highway 35, Suite 305
     Middletown, New Jersey 07748
     Phone: 732-326-1711
     Email: cdevanny@kentmcbride.com

Dated: August 9, 2019

## TABLE OF CONTENTS

I.    PROCEDURAL HISTORY.................................................................1

II.   PRELIMINARY STATEMENT ........................................................ 2

III.  STATEMENT OF FACTS ............................................................... 3

    A.    Dan Logan................................................................................ 3

    B.    Charles Betta............................................................................ 4

    C.    Facts Regarding Channel Growth............................................ 5

IV.   ARGUMENT ................................................................................... 6

    A.    The Claims against the Defendants Should Be Dismissed for Lack of Personal Jurisdiction................................................................... 6

        1.    Plainitff's Burden and the Applicable Standard............................... 6

        2.    This Court Does Not Have General Personal Jurisdiction over Betta and Logan............................................................................ 9

        3.    The Plaintiff Has Not Pierced the Corporate Veil and Therefore This Court Does Not Have Specific Personal Jurisdiction over Betta and Logan............................................................................ 9

            i.     Vicarious Liability................................................................... 11

            ii.    Negligence............................................................................. 12

            iii.   Individual Responsibility for Alleged Fraud............................. 14

            iv.   Asserting Personal Jurisdiction over Both Betta and Logan Would Violate Due Process.......................................... 16

    B.    The Complaint Fails to State a Claim against Betta and Logan............... 17

        1.    The Applicable Pleading Standards............................................. 17

        2.    Plaintiff Fails to Establish Any Basis for Personal Liability Against Betta or Logan............................................................... 19

V.    CONCLUSION ................................................................................. 20

i

## TABLE OF AUTHORITIES

**Supreme Court Cases:**

*Asahi Metal Industry Co. v. Superior Court*
    480 U.S. 102, 112 (1987)..................................................................................... 10

*Ashcroft v. Iqbal*
    556 U.S. 662, 678 (2009)..................................................................................... 18

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, 570 (2007)..................................................................................... 18

*Burger King Corp. v. Rudzewicz*
    371 U.S. 462, 471 (1985)........................................................................... 9, 16, 17

*Helicopteros Nacionales de Columbia, S.A. v. Hall*
    466 U.S. 408, 415 (1984)....................................................................................... 9

*Meyer v. Holley*
    537 U.S. 280, 285 & 289 (2003)..................................................................... 12, 19

*Rush v. Savchuk*
    444 U.S. 320, 322 (1980)....................................................................................... 8

*World-Wide Volkswagen Corp. v. Woodson*
    444 U.S. 286, 297 (1980)..................................................................................... 17

**Federal Court Cases:**

*ACS Partners, LLC v. GFI Management Services, Inc.*
    Civil Action No. H-15-1111, 205 U.S. Dist. LEXIS 171424, 2015 WL 9319235, at *2
    (S.D. Tex. December 23, 2015)............................................................................. 11

*Breathwit Marine Contractors, Ltd. v. Deloach Marine Services, LLC*
    994 F. Supp. 2d 845, 848 (S.D. Tex. 2014)........................................................... 7

*Castleberry v. Branscum*
    721 S.W.2d 270, 271 (Tex. 1986)......................................................................... 11

*Companion Prop. & Cas. Ins. Co. v. Palermo*
    723 F. 3d 557, 559 (5th Cir. 2013)..................................................................... 8, 9

*DeJoria v. Mahgreb Petroleum Expl., S.A.*
    804 F. 3d 373, 388 (5th Cir. 2015)......................................................................... 8

*Donovan v. Grim Hotel Co.*
    747 F. 2d 966, 973-74 (5th Cir. 1984).................................................................. 10

*Earle v. Aramark Corp.*
   No. 3-03-cv-2960-k, 2004 WL 1879884, *2 (N.D. Tex. August 16, 2004)....................... 7

*Evergreen Media Holdings, LLC v. Safran Co.*
   68 F. Supp. 3d 664, 673 (S.D. Tex. 2014)................................................................. 7, 9

*FTC et al. v. All Us Marketing et al.*
   6:15 CV 1016-ORL-28GJK.................................................................................... 11, 12

*Gomez v. Campbell-Ewald Co.*
   768 F. 3d 87 (9th Cir. 2014)................................................................................. 11, 12

*Grisham v. United States*
   103 F. 3d 24, 25-26 (5th Cir. 1997)........................................................................... 17

*Lewis v. Fresne*
   252 F. 3d 352, 359 & n.6 (5th Cir. 2001).................................................................... 8

*Mais v. Gulf Coast Collection Bureau, Inc.*
   No. 11-61936-CIV-SCOLA, 2013 WL 1283885, *4 (S.D. Fla. Marc. 27, 2013)............. 19

*Moncrief Oil Intel, Inc. v. OAF Gazprom*
   414 S.W. 3d 142, 149 (Tex. 2013)............................................................................. 8

*Patin v. Thorughbred Power Boats Inc.*
   194 F. 3d 640, 653 (5th Cir. 2002)............................................................................. 8

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*
   No. 12-22330-CIV, 2015 WL 3644598, *3 (S.D. Fla. June 10, 2015)........................... 19

*Quick Techs., Inc. v. Sage Group, PLC*
   313 F. 3d 338, 343 (5th Cir. 2002)............................................................................. 7

*Quilling v. Stark*
   No. 3:05-CV1976-L, 2006 WL 1683442, *3 (N.D. Te. June 19, 2006)........................... 7

*Rimade Ltd. v. Hubbard Enterprises Inc.*
   388 F. 3d 138, 143 (5th Cir. 2004)............................................................................ 11

*Savanna Group, Inc. v. Trynex, Inc.*
   No. 10 C 7995, 2013 WL 4734004, *8 (N.D. Ill. Sept. 3, 2013).................................... 19

*Stuart v. Spademan*
   772 F. 2d 1185, 1192 (5th Cir. 1985)................................................................. 6, 8, 10

*Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*
   249 F. 3d 413, 418 (5th Cir. 2001)............................................................................. 7

*Texas v. Am. Blastfax, Inc.*
   164 F. Supp. 2d 892, 828 (W.D. Tex. 2001)............................................................... 19

*Wilson v. Belin*,
   20 F. 3d 644, 648 (5th Cir. 1994)............................................................................. 6, 7

**Rules**:

Federal Rules of Civil Procedure
   12(b)(2) ................................................................................................... 2, 6, 20
   12(b)(6) ............................................................................................... 2, 6, 18, 20

## PROCEDURAL HISTORY

On January 22, 2019, the Court issued a Memorandum, Recommendation and Order denying Defendant Charles Betta (Betta) and Defendant Dan Logan's (Logan) respective Motions to Dismiss Plaintiff's complaint. See Doc. 39, Magistrate Judge Nancy Johnson's Memorandum, Recommendation and Order.

The Court recounted Plaintiff's allegations set forth in opposition papers that Defendants Charles Betta and Logan "caused and directed phone calls to be made to Texas as part of a telemarketing campaign[,]" used defendant Capital Advance Solutions LLC "as a corporate shield to evade personal liability for their unlawful conduct[,]" and then "stripped [d]efendant [Capital Advance Solutions], which is now a defunct corporation, of its assets and are allowing it to absorb the civil liability for their illegal conduct." See Doc. 39, p. 7-8.

The Court concluded that if Plaintiff's allegations are true, Plaintiff may pierce the corporate veil of defendant Capital Advance Solutions LLC to assert personal jurisdiction over Defendants Betta and Logan. See Doc. 39, p. 9.

Based on the record, however, the Court could not determine whether plaintiff's jurisdictional allegations were plausible. See Doc. 39, p. 9.

For this reason, the Court denied Defendant Betta and Defendant Logan's respective Motions to Dismiss without prejudice to permit a sixty-day discovery period "limited to the issues of personal jurisdiction over [d]efendants and whether the corporate veil should be pierced." See Doc. 39, p.9. At the conclusion of discovery the Defendants were granted leave to re-file their motion to dismiss. See Doc. 39, p.10.

1

On March 4, 2019, The Honorable Sim Lake, issued an Order adopting the memorandum and recommendations of the Magistrate. <u>See</u> Doc. 41.

The sixty-day time period to conduct jurisdictional discovery was extended by the court to permit the Plaintiff time to obtain documents and information from non-parties via subpoena. The non-parties failed to timely produce the requested documents, prompting the Plaintiff to file a motion to compel. The motion was granted by the court.

On July 22, 2019 the Plaintiff served a Memorandum of Law in support of his argument that this Court has personal jurisdiction over the Defendants based on the discovery obtained.

On July 23, 2019, the Plaintiff served the Defendants with a copy of the documents received in response to his subpoenas.

Betta and Logan respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## **PRELIMINARY STATEMENT**

During the discovery period the Plaintiff propounded interrogatories on Logan and Betta in his effort to establish that this Court has personal jurisdiction over the defendants. A copy of Defendant Logan's answers to interrogatories and supplemental interrogatories are attached hereto as Exhibit A. A copy of the Defendant Betta's answers to interrogatories and supplemental interrogatories are attached hereto as Exhibit B. The Plainitff also issued subpoenas to non-party entities, Channel Growth and Pacific

Marketing.  Channel Growth's response to the Plaintiff's subpoena is attached hereto as Exhibit C.  Pacific Marketing did not respond.  The Plaintiff sought no further discovery.

The discovery adduced reveals that the Defendants never had any ties to Texas that would establish specific or general jurisdiction.  Moreover, there is no evidence that the defendants engaged in any activity that would remove them from the protections of the fiduciary shield/corporate veil.

The discovery obtained establishes that defendant Logan, as CFO of CAS, was not responsible for, or involved in any of the company's marketing efforts.  Furthermore, neither Logan or Betta engaged in any conduct individually or as corporate representatives that would subject them to personal liability or personal jurisdiction.

Finally, none of the causes of action set forth in Plaintiff's Memorandum of Law are properly plead in his complaint.  The Plaintiff's allegations are bald, conclusory and unsupported by the facts.  Accordingly, the Plaintiff's complaint should be dismissed as a matter of law.

## STATEMENT OF FACTS

### A.   Dan Logan

Defendant Logan served answers to Plaintiff's interrogatories and supplemental interrogatories.  See Exhibit A.  His answers to interrogatories establish the following facts:

- Logan was the CFO of CAS.  He joined CAS in 2014.  Exhibit A, Section I, answer 2.

- Logan never owned CAS.  Section 1, answer 5; and Court's determination that Mr. Logan did not own CAS based on corporate documents submitted in camera.  See Doc. 47.

- Logan was responsible for looking after the financial well being of CAS by

3

forecasting finances and budgets, and planning for the financial future of the company. Logan was not involved with telemarketing and he was not responsible for any marketing activities. Exhibit A, Section 1, answers 1,3,4,5 ,7

- Logan did not receive any benefit from CAS other than a salary. Section II, answer 8. He did not receive any profit sharing, bonuses, stocks or equity. Answer 6.

- Logan did not call or contact anyone in Texas, nor did he ask anyone to contact anyone in Texas on his behalf. He was not involved in CAS' marketing efforts. Section III, answer 1.

- Logan was advised that CAS utilized third party vendors to contact businesses to obtain leads. The vendors were required to comply with the TCPA and local state regulations.   Section I, answer 1; Section III, answers 1, 6(1-3).

- Logan was advised that CAS used two companies that specialized in telemarketing, Channel Growth and First Pacific Marketing. CAS did not solicit business from its own phone line. Section III, answers 6(1-3).

- Logan has no ties with Texas whatsoever. See affidavit attached as Exhibit D.

**B.**   **Charles Betta**

Betta served answers to plaintiff's interrogatories and supplemental interrogatories.

See Exhibit B. His answers to interrogatories establish the following facts:

- During 2015 and 2016 Betta was the President and owner of CAS. See Exhibit B. Section I, answer 6; Section II, answer 3.

- Betta was not aware of any prerecorded messages on his behalf. CAS selected third party lead generation specialists to forward to CAS business to business leads on an ala carte basis provided that they followed TCPA and state regulations regarding telemarketing. The vendors were specifically instructed to comply with all aspects of the TCPA and state regulations regarding telemarketing. Vendors were required to sign an agreement to comply with federal and state regulations. See Section I, answer 1; Section III, answer 6(1). The vendors assured CAS that they would take necessary measures to insure compliance. Section III, answer 3. The vendors implemented technology and other measures to insure compliance. See Section III, answer 1.

- CAS hired two vendors, Channel Growth and Pacific Marketing. Both were required to comply with TCPA regulations and state rules regarding telemarketing. Section III, answer 6(2).

4

- Betta did not call anyone in the State of Texas or request that anyone contact someone in Texas on his behalf.  Section III, answer 1.

- CAS closed in April of 2017.  All of its employees were laid off. Section II, answer 9.

- Betta did not receive any benefit from CAS other than a salary. Section 2, answer 8.

- Betta has no ties to Texas.  <u>See</u> Exhibit E.

## <u>FACTS REGARDING CHANNEL GROWTH</u>

Plaintiff makes a number of false representations in his "Summary of Discovery" that are contrary to the actual facts adduced.  In response the Defendants submit the following:

- Plaintiff asserts that the Defendants told him that CAS did not use third party marketing firms.   First, Defendants deny ever speaking with the Plaintiff.  Second, the Defendants have always maintained that CAS used third party vendors to market its services.  CAS insisted that the vendors comply with TCPA and state telemarketing laws.  Furthermore, the Defendants' marketing focused only on businesses.  <u>See</u> Exhibit A and B generally.  Indeed, Channel Growth's answers to interrogatories corroborate the Defendants' representations.  <u>See</u> Exhibit C.

- Plaintiff claims that no contractual obligation existed between CAS and Channel Growth regarding TCPA compliance. This is untrue. The Defendants answers to interrogatories  establish that the vendors were contractually obligated.   Contrary to the Plaintiff's assertion, Channel Growth admits than an agreement existed but did not know if there were any signed contracts. More to the point,  Channel Growth plainly states that it had TCPA guidelines in place for the subcontractors it used to make calls on behalf of CAS, and that CAS was aware of the compliance guidelines.  <u>See</u> Exhibit C.  Significantly, the plaintiff failed to attach the guidelines supplied by Channel Growth in its Answers to Interrogatories.  The guidelines required Channel Growth's subcontractor to comply with the TCPA. The Defendants attached a copy of the guidelines to Channel Growth's Interrogatories.  <u>See</u> Exhibit C.

- Plaintiff claims that the Defendants took no action after the alleged tenth phone call he received. The Defendants emphatically deny ever calling the plaintiff, or directing anyone to call the Plaintiff. Furthermore, after searching its records, Channel Growth has absolutely no record of any calls to the plaintiff made by it, or its third party subcontractor.  <u>See</u> Exhibit C, answers 1, 2.

- Plaintiff claims CAS never followed up with its vendors. Plaintiff apparently relies on

Channel Growth's interrogatory response in which it states that it had no contact with CAS in 2019, or in April and March of 2016. Of course no action was taken in 2019 as CAS was already closed for two years.  Furthermore, the representation that CAS did not communicate with its vendor for two months in 2016 about phone calls that the Defendants did not make, did not direct, and were unaware of does not demonstrate a lack of follow up regarding TCPA compliance.

- CAS specifically required its vendors to comply with the TCPA and state regulations regarding telemarketing. <u>See</u> Exhibits A, B. Indeed, Channel Growth acknowledged this in its answers to interrogatories, and required its subcontractors to comply as well. <u>See</u> Exhibit C. Furthermore, the agreement signed by First Pacific Marketing's representative, Leo Johnson, also requires compliance with automated dialing rules. <u>See</u> sales lender ADAD compliance attached to Exhibit B.

- Plaintiff laments that he is now unable to obtain information from First Pacific Marketing because the Defendants failed to divulge First Pacific since the time he started investigating his claim (apparently since 2016). This is nonsense. The plaintiff did not make a demand for this information until 2019, and the Defendants promptly responded.  It is not the Defendants' fault the Plaintiff is unable to acquire information from First Pacific.

In summary, every assertion made in the Plaintiff's "Summary of Discovery" is a misrepresentation of the actual facts.   An application of the actual facts to the applicable law as set forth below requires the dismissal of the Plaintiff's complaint under Rule 12(b)(2) and 12(b)(6).

## ARGUMENT

I. **THE CLAIMS AGAINST THE DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

### A. <u>Plaintiff's Burden and the Applicable Standard</u>

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." <u>Wilson v. Belin</u>, 20 F. 3d 644, 648 (5th Cir. 1994) (quoting <u>Stuart v.</u>

*Spademan*, 772 F. 2d 1185, 1192 (5th Cir. 1985).  If "the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper." *Quick Techs., Inc. v. Sage Group, PLC*, 313 F. 3d 338, 343 (5th Cir. 2002) (quoting *Wilson*, 20 F. 3d at 648).   In responding to a motion to dismiss, "the plaintiff cannot stand on its pleadings, but must, through affidavits or otherwise, set forth specific facts demonstrating that the Court has jurisdiction." *Quilling v. Stark*, No. 3:05- CV1976-L, 2006 WL 1683442, *3 (N.D. Te. June 19, 2006) (quoting *Earle v. Aramark Corp.*, No. 3-03-cv-2960-k, 2004 WL1879884, *2 (N.D. Tex. August 16, 2004).  Per the Court's procedures, copies of all cited unpublished decisions are attached hereto as Exhibit F.  Although the Court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts," it "is not obligated to credit conclusory allegations, even if uncontroverted." *Breathwit Marine Contractors, Ltd. v. Deloach Marine Services, LLC*, 994 F. Supp. 2d 845, 848 (S.D. Tex. 2014) (citations omitted).

With few exceptions not applicable here, "the district court's personal jurisdiction is coterminous with that of a court of general jurisdiction of the state in which the district court sits." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 673 (S.D. Tex. 2014) (citing *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F. 3d 413, 418 (5th Cir. 2001).  Courts in Texas may exercise personal jurisdiction over a nonresident if "(1) the Texas long arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees."

*DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F. 3D 373, 388 (5th Cir. 2015) (citing *Moncrief Oil Intel, Inc v. OAF Gazprom*, 414 S.W. 3d 142, 149 (Tex. 2013). Texas's long-arm statute extends to the limits of federal constitutional due process, so the analysis collapses into a due process analysis. See *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F. 3d 557, 559 (5th Cir. 2013).  Thus, "[a]sserting personal jurisdiction comports with the due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *DeJoria*, 804 F. 3d at 388.

A defendant establishes minimum contacts with a state when he purposefully avails himself " of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. (citations omitted).  The "due process requirements...'must be met as to  each defendant over whom a ... court exercises jurisdiction." *Patin v. Thoroughbred Power Boats Inc.*, 294 F. 3d 640, 653 (5th Cir. 2002) (quoting *Rush v. Savchuk*, 444 U.S. 320, 322 (1980).  In the case of corporate officers such as Betta and Logan, the fiduciary-shield doctrine provides that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual [even] though the state has in personam jurisdiction over the corporation." *Stuart*, 772 F. 2d at 1197; see also *Lewis v. Fresne*, 252 F. 3d 352, 359 & n.6 (5th Cir. 2001) (discussing and applying doctrine to find it applicable to one of two defendants and describing it as operative where the "plaintiff's claim rests on nothing more than [defendant]'s status as a corporate officer").

8

**B.**     **This Court Does Not Have General Personal Jurisdiction Over Betta and Logan**

General personal jurisdiction exists if a defendant's contacts arise from continuous, systematic, and substantial presence in the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Companion Prop and Cas. Ins. Co v. Palermo*, 723 F. 3d. 557, 559 (5th Cir. 2013). Nothing in the Complaint establishes the defendants have any contacts with Texas, let alone continuous and systematic contacts. And, as made clear in their affidavits, Betta and Logan have *no* jurisdictional contacts with Texas. See Defendants affidavits, Exhibits D and E. Accordingly, there is no basis for the court to find a *prima facie* showing of general jurisdiction over either Defendant. *Cf. Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 334, 683 (S.D. Tex. 2014) (finding no general personal jurisdiction where defendants submitted uncontroverted affidavit stating they had no contacts with the State of Texas).

**C.**     **The Plaintiff has Not Pierced the Corporate Veil and Therefore This Court Does Not Have Specific Personal Jurisdiction over Betta and Logan**

Specific jurisdiction over the Defendants is also lacking. Specific jurisdiction requires that the defendants purposefully directed activities at the State of Texas, and that Plaintiff's claimed injury arose from the same activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King*, 471 U.S. at 474-75. Thus, to show minimum contacts, the plaintiff is required to point to "*an action of the defendant* purposefully directed toward the

forum State." _Asahi Metal Industry Co v. Superior Court_, 480 U.S. 102, 112 (1987)

(emphasis added).

The Fifth Circuit has phrased the specific jurisdiction analysis as asking the following

three questions:

> (1) whether the defendant has minimum contacts with the forum state, i.e.,
> whether it purposefully directed its activities toward the forum state or
> purposefully availed itself of the privileges of conducting activities there; (2)
> whether the plaintiff's cause of action arises out of or results from the
> defendant's forum-related contacts; and (3) whether the exercise of personal
> jurisdiction is fair and reasonable. _Vanderbilt Mortg. and Fin., Inc. v. Flores_,
> 692 F. 3d 358, 375 (5th Cir. 2012) (quoting _McFadin v. Gerber_, 587 F. 3d
> 753, 759 (5th Cir. 2009).

The Complaint contains no facts against Betta and Logan that could result in an

affirmative answer to any of these questions.  The Complaint simply alleges "personal

liability by the company President and CFO for implementing a business strategy reliant

on unlawful actions for their personal enrichment".  Far more is required to provide a basis

for the exercise of personal jurisdiction over a corporate officers such as Betta and Logan,

even if personal jurisdiction were established over CAS.  That is because a defendants

status "soley as a corporate officer does not create personal jurisdiction over that

individual...." _Stuart_, 772 F. 2d at 1197.

To assert jurisdiction over corporate officers such as Betta and Logan for CAS'

alleged misconduct,  Plaintiff is required to make allegations or state facts to plausibly

show that the Defendants personally engaged in acts or "directed" and "controlled" the

alleged violations in order to pierce the corporate veil. _Donovan v. Grim Hotel Co._, 747 F.

2d 966, 973-74 (5th Cir. 1984). Further "[a]n individual's status as an officer, director, or

10

majority shareholder of a corporation alone is insufficient to support the exercise of personal jurisdiction." _ACS Partners, LLC v. GFI Management Services, Inc._, Civil Action No. H-15-1111, 2015 U.S. Dist. Lexis 171424, 2015 WL 9319235, at *2 (S.D. Tex. Dec. 23, 2015).      Generally, the corporate veil prevents personal liability for tort or contract obligations of the corporation. _Castleberry v. Branscum_, 721 S.W.2d 270, 271 (Tex. 1986) superseded on other grounds by statute.   However, under Texas law, "there are three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetuate fraud." _Rimade Ltd. v. Hubbard Enterprises, Inc._, 388 F. 3d 138, 143 (5th Cir. 2004).

The Plaintiff does not directly address any of the above categories in his Memorandum of Law.  Instead he espouses various theories of liability against Betta and Logan.  As identified by the Plaintiff, these theories include: vicarious liability, negligence and individual responsibility.   None of these theories are properly plead in Plaintiff's Complaint.  Indeed, negligence is not even mentioned; and personal liability independent of the corporate veil is not asserted.   Nevertheless, each theory is dispatched below.

## I.      **Vicarious Liability**

Plaintiff argues that Betta and Logan are liable for the actions of their telemarketers. Plaintiff's reliance on _FTC et al. v. All Us Marketing et al._ (6:15 CV 1016-ORL-28GJK) and _Gomez v. Campbell-Ewald Co._, 768 F.3d 871 (9th Cir. 2014) in support of this assertion is misplaced.

11

*FTC et al. v. All Us Marketing* involved an unopposed petition for injunctive relief filed by the Federal Trade Commission and the Attorney General for the State of Florida for violations of the Federal Trade Act, the Telemarketing and Consumer Fraud and Abuse Prevention Act and various state statutes.  An order was entered by the court for the relief sought.  The case did not address whether corporate officers or owners could be held responsible for the conduct of their telemarketers.  Indeed, the Court in *FTC* never discussed any of the issues involving personal jurisdiction or personal liability involving the corporate veil that are before this Court.

*Gomez v. Campbell-Ewal Co.* involved  allegations that the company  instructed or allowed a third-party vendor  to send unsolicited text messages on behalf of the United States Navy.  The case never discussed whether Campbell-Ewal Co's corporate members could be held accountable for its actions, or subject to personal jurisdiction.

Contrary to plaintiff's contention,  it is well settled that "in the absence of  special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by  its employees or agents...... A corporate employee typically acts on behalf of the corporation, not its owner." *Meyer v. Holley*, 537 U.S. 280, 285 &289 (2003).

## ii    **Negligence**

The plaintiff does not set forth a cause of action for negligence in his Complaint, much less establish any facts that would support such a claim against Betta and Logan. Plaintiff raises this argument for the first time in his Memorandum of Law.  Thus, Plaintiff's

12

claim for negligence is not properly before the court.  However, even if Plaintiff properly plead negligence, negligence is not a justification for piercing the corporate veil under the accepted theories contemplated by the case law (i.e. alter ego, illegality or sham). Furthermore, the discovery does not reveal any personal negligence on behalf of Betta or Logan.

Plaintiff argues that Betta and Logan are personally liable for failing to institute procedures that may have prevented the telemarketers from calling him.  Namely, plaintiff contends that the defendants failed to vet Pacific Marketing and failed to monitor for compliance. This argument fails for several reasons.

First, discovery has revealed that defendant, Logan, had no involvement whatsoever in CAS' marketing or compliance efforts. As the CFO, Logan was concerned with company finances.  Thus,  Logan did not owe a duty to vet CAS' telemarketers or monitor for compliance.

Plaintiff's claim for personal liability against Charles Betta is equally unavailing. Betta, as president of CAS, employed a marketing director who selected CAS' marketing firms.  Betta, in his corporate capacity, requested that these firms comply with TCPA guidelines.  Channel Growth acknowledges that guidelines were in fact in place.  Plaintiff has not come forward with any evidence to controvert Betta's sworn affidavit or answers to interrogatories.

Plaintiff contends that Betta and Logan are personally liable because  CAS hired First Pacific without knowing that a lawsuit was filed against it. Although First Pacific was one of the vendors that provided leads to CAS, there has been no showing by the Plaintiff

13

that First Pacific called him on behalf of CAS. Second, the fact that Betta and Logan were unaware that First Pacific was sued is a far cry from establishing negligence, or grounds for subjecting them to jurisdiction in Texas.

Plaintiff's argument that the Defendants failed to monitor for compliance is of no moment. Plaintiff points out that CAS did not call Channel Growth in 2019. Plaintiff fails to realize that CAS closed operations in 2017.

Furthermore, the fact that CAS did not communicate with Channel Growth for two months in 2016 about phone calls that the Defendants did not make, did not direct and were unaware of, does not demonstrate a lack of follow up regarding TCPA compliance.

### iii    Individual Responsibility for Alleged Fraud

Plaintiff argues that he may pierce the corporate veil because the Defendants allegedly committed fraud. In a somewhat tortured explanation, that is not apparent from his Complaint or the evidence adduced during discovery, Plaintiff asserts that Betta and Logan allegedly told him that they did not use telemarketers or employ others to call him. Plaintiff then argues that this misrepresentation constituted an act of fraud in support of the unlawful acts taken by their telemarketers which entitles him to pierce the veil.[1] There are no facts that support Plaintiff's allegation of collusion between the Defendants and telemarketers to commit fraud. Even if the Defendants told the Plaintiff they did not use telemarketers, the Plaintiff still fails to show how the Defendants intended the Plaintiff to

---

1. Under Texas law, the elements of common law fraud are (1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, (6) it caused injury. _Jacked UP, LLC v. Sara Lee Corp._, 854 F. 3d 797, 810 (5th Cir. 2017). Fraud has not been properly plead in the Plaintiff's Complaint or established through discovery.

14

act upon the alleged misrepresentation; how the Plaintiff relied on the misrepresentation; or how telling the Plaintiff that CAS did not use telemarketers caused him harm.

Plaintiff argues Betta is personally liable for alleged TCPA call violations made on behalf of CAS by third-party marketing companies because: Betta owned the company, chose its marketing strategy, was involved in crafting the marketing message, chose the marketing firms and profited from their activities.(Plaintiff's Memorandum, Point VII). Plaintiff's argument fails on every accord.

Betta was the President of CAS.  The business of CAS was to provide loans to businesses in need.  CAS was not a telemarketing firm.  CAS did not make calls to potential customers, but relied on third party marketing firms who specialize in the field.

There is no evidence that Betta "created the marketing message" allegedly received by the Plaintiff.[2]  Nor is there any evidence that Betta called the Plaintiff or directed any calls to the Plaintiff.

Further, Plaintiff has not come forth with any evidence to demonstrate that Betta employed an unlawful business strategy to enrich himself.   Contrary to plaintiff's contention, the actions taken by Betta, in his role as President of CAS, were done to insure compliance with the TCPA. CAS  hired a marketing manager to select telemarketing firms. These firms entered into agreements with CAS and assured CAS they would comply with the TCPA and state regulations.

_____

[2] In his first opposition to the Defendants' initial motion to dismiss, Plaintiff relied on Betta's deposition testimony in the _Rinky Dink_ matter to show that Betta drafted the telemarketing message. This deposition testimony was given in 2010. Betta did not create messages after _Rinky Dink_.  Moreover, the recorded messages Plaintiff allegedly received from telemarketers never mention CAS, Betta or Logan. Finally, the plaintiff does not have any of the alleged recordings.

Finally, there has been no showing that Betta enriched himself by some grand scheme to defraud the Plaintiff. Betta received a biweekly salary from the company. CAS was forced to close and lay off its staff in 2017. The Plaintiff has not shown that Betta received any ill-gotten gains as a result of a conspiracy to commit fraud. Nor has there been a showing that Betta reaped a benefit from the company's financial failure. Plaintiff's accusation that Betta stripped the company of its assets is completely unsupported.

Plaintiff's claim of fraud against Logan is also meritless. Logan had no involvement whatsoever in CAS' marketing efforts. Further, Logan had no responsibility for monitoring TCPA compliance. As CFO Logan was concerned with company finances.

As far as Logan understood it, vendors were obligated to comply with the TCPA and state telemarketing laws. He believed that these vendors, who were acting on behalf of the corporation, were in compliance.

Logan did not receive any financial benefit from the calls allegedly made to the Plaintiff in violation of telemarketing rules. Like Betta, Logan was a salaried employee. Both Logan and Betta lost their jobs as a result of the company's failure.

The Plaintiff has not established any facts that Betta and Logan conspired with telemarketers to perpetrate a fraud against the Plaintiff in violation of the TCPA.

### iv   Asserting Personal Jurisdiction over Both Betta and Logan Would Violate Due Process

Even if Betta and Logan were somehow within the reach of Texas's long-arm statute, asserting personal jurisdiction over them would offend due process. *Burger King*, 471 U.S. at 475. Due process requires that Betta and Logan have sufficient minimum

16

contacts with Texas arising from their conduct and connections with Texas that would cause them to expect to be hauled before the State's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).   Such contracts must be somewhat substantial, and cannot merely be "random, fortuitous or attenuated." *Burger King*, 471 U.S. at 475.

Nothing in the Complaint suggests exercising jurisdiction over Betta or Logan under these circumstances would comport with due process. The only conceivable "contact" Plaintiff alleges is that a single telephone conversation took place between the Plaintiff and the Defendants while the Defendants were in New Jersey. During that alleged conversation, the Defendants, as corporate representatives, denied that CAS called the Plaintiff, and denied that CAS violated the TCPA.   Indeed, the jurisdictional discovery fails to reveal *any* facts showing that Betta or Logan called the Plaintiff, or purposefully directed telemarketers to violate the TCPA in order to contact the Plaintiff.   Under the circumstances, the exercise of jurisdiction in Texas over Betta and Logan would be unreasonable, unfair and in violation of due process.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BETTA AND LOGAN

### A.   The Applicable Pleading Standards

Dismissal is also required under Federal Rule of Civil Procedure 12 (b)(6) for failure to state a claim upon which relief can be granted.   A motion under Rule 12 (b)(6) challenges the legal sufficiency of a complaint. *Grisham v. United States*, 103 F. 3d 24, 25-26 (5th Cir. 1997).   To satisfy the pleading requirements of Rule 8(a), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. A "sheer possibility that the defendant has acted unlawfully" is insufficient, and "factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 555-56. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 557. A complaint therefore must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action therefore will not suffice. *Twombly*, 550 U.S. at 555. Similarly, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678.

When examining the merits of a Rule 12(b)(6) motion, the complaint's "well-pleaded" factual allegations are accepted as true and construed most favorably to the plaintiff. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, "bare assertions" which "amount to nothing more than a 'formulaic recitation of the elements' of a claim, must be rejected as "conclusory and [are] not entitled to be assumed true. *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555).

18

**B.**    **Plaintiff Fails to Establish Any Basis for Personal Liability Against Betta or Logan.**

All of Plaintiff's claims should be dismissed because he has failed to provide facts sufficient to state a plausible claim for personal liability against Betta and Logan.  It is well-settled that "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents...A corporate employee typically acts on behalf of the corporation, not its owner or officer".  *Meyer v. Holley*, 537 U.S. 280, 285 & 289 (2003).  The courts have specified that "the direct communication or authorization of wrongful acts by the corporate officer...that clearly violated the TCPA" is required to impose personal liability under the TCPA.  *Mais v. Gulf Coast Collection Bureau, Inc.,* No. 11-61936-CIV-SCOLA, 2013 WL 1283885, *4 (S.D. Fla. Mar. 27, 2013).  See also *Texas v. Am. Blastfax, Inc.,* 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2015 WL 3644598, *3 (S.D. Fla. June 10, 2015).  Cf. *Savanna Group, Inc. v. Trynex, Inc.,* No. 10 C 7995, 2013 WL 4734004, *8 (N.D. Ill. Sept. 3, 2013).

The Plaintiff has not set forth any facts to establish that CAS was an alter ego of Betta or Logan; that CAS was used for illegal purposes; or was used as a sham to perpetrate fraud.  The crux of Plaintiff's argument in his Memorandum of Law is that the Defendants individually colluded with telemarketers to defraud the Plaintiff in violation of the TCPA. There has simply been no showing of active, personal participation by Betta or Logan in the alleged fraud.  The Plaintiff  has not established any facts that Betta and

19

Logan directed or controlled independent  telemarketers to call the Plaintiff in violation of the TCPA.

## **CONCLUSION**

Defendants hereby request that the Court dismiss Plaintiff's complaint for lack of personal jurisdiction, pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(2) and for failure to state a claim upon which relief can be granted, pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(6).

Respectfully submitted,

**KENT & MCBRIDE, P.C.**

By: _____

Christopher D. Devanny, Esq. (3719)
One Arin Park
1715 Highway 35, Suite 305
Middletown, New Jersey 07748
Phone: 732-326-1711
Email: cdevanny@kentmcbride.com

Dated: August 9, 2019

20