# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

PAUL R.F. SCHUMACHER,           )
          Plaintiff,           )
                            )
v.           )       Case No. 4:18-CV-00436
                            )
CAPITAL ADVANCE SOULTIONS           )   **DEFENDANT DAN LOGAN'S**
LLC, CHARLES BETTA AND DAN           )   **ANSWERS TO INTERROGATORIES**
LOGAN,           )
                            )
          Defendants.  .           )

TO:    Paul R.F. Schumacher

      Defendant Dan Logan, by and through his attorneys, Kent & McBride, P.C., hereby provides Answers to Plaintiff's Interrogatories as set forth below. These responses are made without waiver of, and with preservation of, the following:

1.     All objections as to competency, relevancy, materiality, privilege and admissibility of the responses and the subject matter thereof as evidence for any purposes in any further proceeding in this action (including the trial of this action) and any other action;

2.     The right to object to the use of any such responses, or the subject matter thereof, on any ground in any further proceeding of this action (including the trial of this action) and any other action;

3.     The right to object on any ground at any time to a demand or request for further response to plaintiff's interrogatories, or any other interrogatories or document requests, or other discovery proceedings involving or relating to the subject matter of this controversy; and

4.     The right at any time to revise, correct, add to, supplement or clarify any of the responses contained herein.

5.     In the event any responses and/or documents are inadvertently produced by defendant which fall within the attorney-client and/or attorney work-product privilege, defendant shall not be deemed to have waived its privilege as to any such document or the information contained therein, or the right to the attorney-client or work-product privilege as to any other matter which arises during the course of this litigation or any subsequent proceeding.

## GENERAL OBJECTIONS

Defendant intends to abide by his obligation to produce the requested information and documents discoverable under the Court Rules governing the United States District Court for the Southern District of Texas, Houston Division. The specific objections described below are intended to clarify defendant's position with respect to each interrogatory. Accordingly, where applicable, defendant's answer to an interrogatory will include one or more of the following objections:

A.      Defendant objects to each interrogatory to the extent that it calls for information that would impose upon defendant a vexatious and undue burden on the ground that such interrogatory is oppressive and/or is intended to harass Defendant. [Objection on the grounds of "Undue Burden."]

B.      Defendant objects to each interrogatory to the extent that it is drafted in such a manner that it is overly broad in that the interrogatory purports to seek the disclosure of information or data which is unduly burdensome to obtain and/or can be obtained from other documentation more readily available and without causing unnecessary expense and hardship to defendant or seeks information not relevant to this proceeding as defined in subpart "C" below. [Objection on the grounds of "Overbreadth."]

C.      Defendant objects to each interrogatory to the extent that it seeks the disclosure of documents, information or data which is irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. [Objection on the grounds of "Irrelevancy."] Objections on the grounds of Irrelevancy are specifically interposed as to all interrogatories which seek the disclosure of information beyond the scope of and not relevant to the allegations contained in plaintiff's Complaint nor reasonably calculated to lead to the discovery of evidence admissible with respect to such allegations.

D.      Defendant objects to each interrogatory to the extent that it requests the disclosure of information or documents incorporating or containing information which is protected by the attorney-client privilege, the work-product privilege or other privileges, or is material prepared in anticipation of litigation, upon the ground that the privileged matter is exempt from discovery, and trial preparation material may only be discoverable upon satisfaction of the prerequisites delineated in the Rules of Court, which prerequisites have not been satisfied. [Objection on the grounds of "Privilege."]

E.      Defendant objects to each interrogatory to the extent that it is vague, ambiguous or otherwise lacks sufficient precision or particularity to permit formulation of a response. [Objection on the grounds of "Vagueness."]

F.      Defendant objects to each interrogatory to the extent that it requires defendant to obtain information from or with respect to persons or entities over whom defendant has no control. [Objection on the grounds of "Control."]

G.      Defendant objects to each interrogatory to the extent that it seeks disclosure of information already known or available to plaintiff or documentation in plaintiff's possession which may be obtained more readily by plaintiff and without subjecting

Defendant to unreasonable burden and expense.   [Objection on the grounds of "Availability."]

H.   Defendant objects to each interrogatory to the extent it seeks information that is confidential, trade secret, subject to privacy rights or otherwise proprietary in nature, the disclosure of which would or could harm defendant.   [Objection on the grounds of "Proprietary Information."]

I.   Defendant objects to the manner in which plaintiff assorts and labels the interrogatory sections.   The defendant further objects to the manner in which the plaintiff defines the terms culpability, benefit and jurisdiction.   Defendant does not concede he is culpable or received a benefit as defined by the plaintiff or under the law applicable to the issues in this case.   Furthermore, defendant maintains he is not subject to jurisdiction of this court.

## DEFENDANT DAN LOGAN'S ANSWERS TO INTERROGATORIES

I.

1.   Were you aware that a prerecorded message was being used to generate leads or telemarket either by your company or other associates, or on your behalf?

**ANSWER:**

**I was employed as the Chief Financial Officer of Capital Advance Solutions (CAS). As CFO I looked after the financial well-being of the company by forecasting finances and budgets and planning the financial future of the company. I oversaw accounting, finance and taxation issues.  I was not involved with telemarketing.  I am unaware of any calls made on my behalf. However, upon information and belief, CAS selected third-party lead generation specialists to forward to CAS business to business leads on an ala carte basis provided that they followed TCPA and state regulations regarding telemarking.  CAS did employ the vendors, and purchased leads strictly ala carte.  I was not involved in this aspect of the business and therefore I don't know what method the vendor employed to obtain a lead. Upon information and belief, since I have been employed with the company these companies were required to comply with TCPA and local state regulations. Vendors signed an agreement assuring compliance.  See attached vendor agreement.**

2.   List the venue, case number, and resolution of each federal lawsuit brought against you or the company since 2010 until 2015 for telemarketing violations:

**ANSWER:**

**The defendant objects to this request as overbroad and beyond the scope of jurisdictional discovery.  The fact that a lawsuit was filed against the defendants and the disposition of that lawsuit does not address the issue of whether this court has personal jurisdiction over the defendants in this case.  Furthermore, the defendant was not employed by CAS until 2014. Without waving the objection, the**

defendant is aware that CAS was sued in:

*Ryan Alcorn v. Capital Advance Solutions* **US District Court for the Southern District of Texas 15-cv-02369.   A default judgment was entered.   The matter was transferred to US District Court in New Jersey 1:7 MC-8 NLH.   The matter was ultimately settled without any admission of wrongdoing.   I was not a party to this lawsuit.**

3.   After lawsuits were filed, which served beyond any doubt to make you aware of the rules you had been violating, what steps were taken or procedures implemented to prevent violations of those rules in the future, including: failing to screen out cell phones, use of prerecorded voice, the use of an ATDS as defined by the FCC, or calling numbers on the national or state do not call registries:

**ANSWER:**

**Defendant objects to this question as it assumes facts not established and states legal conclusions.   Without waiving the objection, I deny that I violated any rules. Furthermore, I was employed as the CFO of the company.   I was not responsible for implementing the procedures identified in this interrogatory.**

4.   Describe how your marketing selection and preparation process has changed from or is essentially the same as that described in the Rinky Dink deposition (previously submitted by this court), which details Mr. Betta's personal involvement which state target selection and a lack of compliance procedures.

**ANSWER:**

**I was not employed by CAS at the time of the Rinky Dink deposition.   Furthermore, I was not responsible for marketing activities while acting as CFO of CAS.**

5.   Has Mr. Betta or Mr. Logan at any time represented Mr. Logan as being responsible for legal compliance, telemarketing issues, or referred him as a legal officer for the company?

**ANSWER:**

**I have not represented myself as anything other than the CFO of CAS.**

6.   What role(s) did Mr. Betta fill in the company during 2015-2016?

**ANSWER:**

**Mr. Betta was the President of the Company.**

7.   What role(s) did Mr. Logan fill in the company during 2015-2016?

**ANSWER:**

I was employed as the CFO. As CFO I looked after the financial well-being of the company by forecasting finances and budgets and planning the financial future of the company. I oversaw accounting, finance and taxation issues.

## II.

1. List all of the above suits that the company failed to respond to, failed to appear for, or which were allowed to fall into default judgment.

    **ANSWER:**

    **Defendant objects to this interrogatory as being overbroad and not calculated to elicit information regarding personal jurisdiction and whether the corporate veil was breached. Without waiving the objection, I am aware that CAS was sued for TCPA violations. I don't know all of the cases that CAS failed to appear in or defaulted. The company defended some TCPA claims and settled others. I recall that CAS defaulted in the *Redman* and *Alcon* cases. The *Alcorn* case was eventually resolved by settlement. I am also aware of *Abante Rooter and Plumbing Inc. v. CAS* 4-18-cv-01762 in California. CAS has not appeared in that matter. I don't believe a judgment has been entered. I am aware that a default was entered in the case of *Jackson v. CAS* DJ-026297-17 in New Jersey. This matter was settled.**

2. List all sanctions levied against you or the company for the company failing to respond to subpoenas or judgments, as well as any outstanding judgments against you or the company which have not been satisfied.

    **ANSWER:**

    **I have not received any sanctions. It is my understanding that CAS was required to pay attorney fees associated with opposing counsel's efforts to obtain discovery via subpoena in the *Redman* matter. A judgment was entered for the fees. I am unaware of any other judgments related to TCPA matters that have not been satisfied.**

3. Did Mr. Betta own a percentage of the company or its profits during 2015, 2016, or onward?

    **ANSWER:**

**Yes.**

4. Other than base salary, did Mr. Betta profit from the company's activities or dissolution either through profit sharing, bonuses, or equity ownership, including stock or partnership options:

   **ANSWER:**

   **No.**

5. Did Mr. Logan own a percentage of the company or its profits during 2015, 2016, or onward:

   **ANSWER:**

   **No.**

6. Other than base salary, did Mr. Logan profit from the company's activities or dissolution either through profit sharing, bonuses, or equity ownership, including stock or partnership options:

   **ANSWER:**

   **No.**

7. List the legal name and address and ownership percentage of every person who was part owner of the company in 2015, 2016, 2017 and 2018, until dissolution.

   **ANSWER:**

   **Defendant objects to this interrogatory as being irrelevant and not calculated to elicit information regarding whether the court has personal jurisdiction over the defendants in this case, and whether these defendants breached the corporate veil. Without waiving the objection, Charles Betta was an owner of the business in 2015, 2016, 2017 and 2018. I was not an owner of the business.**

8. List the legal name and address of every person who benefited financially from the profits made by the company in the years 2015-2016 or from its dissolution.

   **ANSWER:**

The defendant objects to this interrogatory as overbroad and vague. The defendant also objects to the extent this interrogatory seeks information unrelated to the defendants sued in this case. Without waiving the objection, I did not receive any benefit from the company other than to receive a salary. The company has not yet filed for dissolution.

9. What is the current state of the company's dissolution, and what was its status when this lawsuit was filed?

**ANSWER:**
The company shut down in April of 2017. At that time the entire Atlantic City office was closed. All company employees were laid off. The company has not yet filed for dissolution.

**III.**

1. How many contacts (calls, letters, other means of direct contact) were made by Capital Advance employees or direct contractors to Texas area phone numbers or with Texas addresses during the years 2015-2016? (If more than a hundred, an estimate to the nearest order of magnitude will suffice).

**ANSWER:**

I did not call or contact anyone in Texas, nor did I ask anyone to contact anyone in Texas on my behalf. I was not involved in CAS' efforts to develop business. Upon information and belief CAS employees did not call Texas residents to generate business. Third-party lead generation specialists may have called Texas area codes and forwarded CAS business to business leads on an ala carte basis provided that they followed TCPA and state telemarketing rules.

2. How many customers did the business have during the years 2015-2016 in the state of Texas?

**ANSWER:**

I don't know the answer to this question.

3. How many contracts (as above) were made by other associates to Texas area phone numbers or with Texas addresses during the years 201-2016? (If more than a hundred, an estimate to the nearest order of magnitude will suffice).

   **ANSWER:**

   **I don't know the answer to this question.**

4. Your company's business and marketing have been previously descried by Mr. Betta as being in all 50 states. Had that changed as of 2015 or 2016 to specifically exclude Texas?

   **ANSWER:**

   **I don't know the answer to this question.**

5. Did you specifically include or exclude (or neither) the state of Texas in your marketing area/strategy either internally or for your lead generation or telemarketing firms?

   **ANSWER:**

   **I was not involved in marketing strategy and did not make these decisions.**

6. List every state in which your company registered as a business with telemarketing, as required by Texas, Florida and others.

   To enable us to serve subpoenas to verify or refute your claims about no business in Texas:

   1. State the name and address of each lead generation or telemarketing firm that made calls on the company's behalf or handed off leads to the company via telephone during the period 2015-2016.

   2. State the name and address of each telephone service provider that your company used for outgoing calls during the period 2015-2016 and the account number for each account.

3. If any other method was used to make calls without a specific provider (such as VOIP code), describe the nature of the method and whether it was internally or externally developed, and by whom.

**ANSWER:**

I don't know the answer to this question.

Texas

1. I have been advised that CAS hired third party lead generation specialists to forward it business to business leads on an ala carte basis provided that they followed the TCPA and local state rules regarding telemarketing. I am aware of two such vendors, Channel Growth and First Pacific Marketing.

2. CAS' telephone carrier was the American Telephone Company with a mailing address of PO Box 1465 Melville, NY 11747. CAS did not solicit business from the phoneline associated with this account. It is my understanding that CAS was referred calls from third party vendors, Channel Growth and Pacific Marketing. CAS does not possess the phone records for these third-party vendors.

3. I don't know the answer to this question.

## **VERIFICATION**

Dan Logan deposes and says:

Deponent is a defendant in the within action.  Deponent has read the foregoing responses to Plaintiff's Interrogatories and knows the contents thereof, that the same are true to deponent's knowledge or information available to deponent, except as to those matters stated to be alleged upon information and belief, and as to those matters stated upon information and belief, deponent believes them to be true.

BY: _____

Daniel Logan

Dated:  4/13/19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PAUL R.F. SCHUMACHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-00436 |
| | ) | |
| CAPITAL ADVANCE SOULTIONS | ) | **DEFENDANT DAN LOGAN'S** |
| LLC, CHARLES BETTA AND DAN | ) | **ANSWER TO PLAINTIFF'S SECOND** |
| LOGAN, | ) | **DOCUMENT REQUEST AND** |
| | ) | **INTERROGATORIES** |
| Defendants. | ) | |

TO:   Paul R.F. Schumacher

Defendant Dan Logan, by and through his attorneys, Kent & McBride, P.C., hereby provides Answers to Plaintiff's Second Document Request and Interrogatories as set forth below. These responses are made without waiver of, and with preservation of, the following:

1.      All objections as to competency, relevancy, materiality, privilege and admissibility of the responses and the subject matter thereof as evidence for any purposes in any further proceeding in this action (including the trial of this action) and any other action;

2.      The right to object to the use of any such responses, or the subject matter thereof, on any ground in any further proceeding of this action (including the trial of this action) and any other action;

3.      The right to object on any ground at any time to a demand or request for further response to plaintiff's interrogatories, or any other interrogatories or document requests, or other discovery proceedings involving or relating to the subject matter of this controversy; and

4.      The right at any time to revise, correct, add to, supplement or clarify any of the responses contained herein.

5.      In the event any responses and/or documents are inadvertently produced by defendant which fall within the attorney-client and/or attorney work-product privilege, defendant shall not be deemed to have waived its privilege as to any such document or the information contained therein, or the right to the attorney-client or work-product privilege as to any other matter which arises during the course of this litigation or any subsequent proceeding.

## GENERAL OBJECTIONS

Defendant intends to abide by his obligation to produce the requested information and documents discoverable under the Court Rules governing the United States District Court for the Southern District of Texas, Houston Division. The specific objections described below are intended to clarify defendant's position with respect to each interrogatory. Accordingly, where applicable, defendant's answer to an interrogatory will include one or more of the following objections:

A.      Defendant objects to each interrogatory to the extent that it calls for information that would impose upon defendant a vexatious and undue burden on the ground that such interrogatory is oppressive and/or is intended to harass Defendant. [Objection on the grounds of "Undue Burden."]

B.      Defendant objects to each interrogatory to the extent that it is drafted in such a manner that it is overly broad in that the interrogatory purports to seek the disclosure of information or data which is unduly burdensome to obtain and/or can be obtained from other documentation more readily available and without causing unnecessary expense and hardship to defendant or seeks information not relevant to this proceeding as defined in subpart "C" below. [Objection on the grounds of "Overbreadth."]

C.      Defendant objects to each interrogatory to the extent that it seeks the disclosure of documents, information or data which is irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. [Objection on the grounds of "Irrelevancy."] Objections on the grounds of Irrelevancy are specifically interposed as to all interrogatories which seek the disclosure of information beyond the scope of and not relevant to the allegations contained in plaintiff's Complaint nor reasonably calculated to lead to the discovery of evidence admissible with respect to such allegations.

D.      Defendant objects to each interrogatory to the extent that it requests the disclosure of information or documents incorporating or containing information which is protected by the attorney-client privilege, the work-product privilege or other privileges, or is material prepared in anticipation of litigation, upon the ground that the privileged matter is exempt from discovery, and trial preparation material may only be discoverable upon satisfaction of the prerequisites delineated in the Rules of Court, which prerequisites have not been satisfied. [Objection on the grounds of "Privilege."]

E.     Defendant objects to each interrogatory to the extent that it is vague, ambiguous or otherwise lacks sufficient precision or particularity to permit formulation of a response. [Objection on the grounds of "Vagueness."]

F.     Defendant objects to each interrogatory to the extent that it requires defendant to obtain information from or with respect to persons or entities over whom defendant has no control. [Objection on the grounds of "Control."]

G.     Defendant objects to each interrogatory to the extent that it seeks disclosure of information already known or available to plaintiff or documentation in plaintiff's possession which may be obtained more readily by plaintiff and without subjecting Defendant to unreasonable burden and expense. [Objection on the grounds of "Availability."]

H.     Defendant objects to each interrogatory to the extent it seeks information that is confidential, trade secret, subject to privacy rights or otherwise proprietary in nature, the disclosure of which would or could harm defendant.    [Objection on the grounds of "Proprietary Information."]

I.     Defendant objects to the manner in which plaintiff assorts and labels the interrogatory sections.   The defendant further objects to the manner in which the plaintiff defines the terms culpability, benefit and jurisdiction.  Defendant does not concede he is culpable or received a benefit as defined by the plaintiff or under the law applicable to the issues in this case. Furthermore, defendant maintains he is not subject to jurisdiction of this court.


**DEFENDANT DAN LOGAN'S ANSWERS TO PLAINTIFF'S SECOND DOCUMENT REQUEST AND INTERROGATORIES**

**I.**

1.     In your first set of answers, you claimed that vendors were instructed and required to comply with all federal and state laws regarding telemarketing.  What steps, if any, were taken to vet the companies for a history of such violations, or for ongoing violations they had been committing?

      **ANSWER:**

      Objection. Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court may retain personal jurisdiction.  Without waiving this objection, I was not involved in CAS' marketing efforts and don't know the answer to this question.

2.      Additionally, what processes, if any, were in place to audit and verify those company's compliance in their marketing or lead generation on behalf of CAS?

**ANSWER:**

Objection. Whether the defendant took any measures to audit a third-party vendor has nothing to do with whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. Without waiving the objection, I was not involved in CAS' marketing efforts and don't know the answer to this question.

3.      Were you aware that Pacific Marketing was sued by Missouri Attorney General for violating the state telemarketing laws and they were prohibited by a judgment in that case from marketing in Missouri prior to September 2015 (the date of the first known call to Plaintiff)?

**ANSWER:**

Objection. Whether the defendant was aware that Pacific Marketing was sued by the Missouri Attorney General has nothing to do with whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. Without waiving this objection, I was not involved in CAS' marketing efforts and not charged with investigating Pacific Marketing.

4.      Were you aware that Pacific Marketing was the subject of a class action suit in January 2016 for violating federal telemarketing laws?

**ANSWER:**

Objection. Whether the defendant was aware that Pacific Marketing was sued has nothing to do with whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. Without waiving the objection, I was not involved in CAS' marketing efforts and not charged with investigating Pacific Marketing.

5.      If and when you became aware of these lawsuits, did you discontinue using that firm for your lead generation at that time or were they still actively marketing on your company's behalf when plaintiff received the calls in violation of the national Do Not Call Registry (among the other violations alleged)?

**ANSWER:**

Objection.  Whether the defendant was aware that Pacific Marketing was sued has nothing to do with whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction. Without waiving the objection, I was unaware of any lawsuits.   Furthermore, I emphatically deny that I called the plaintiff, or that anyone else called the plaintiff on my behalf or at my direction.  I further deny any knowledge of anyone calling the plaintiff on behalf of CAS.

Finally, I was not involved in CAS' marketing efforts, and was not charged with terminating vendors.

6.      After plaintiff initially contacted you and described to Mr. Betta and Mr. Logan the nature of the violations in the calls he had received, what steps, if any, did you take to investigate and correct those alleged violations by the firm's telemarketers?

**ANSWER:**

Objection. This interrogatory is predicated on an event that did not occur. I emphatically deny that I ever spoke to the plaintiff.

7.      As plaintiff received further unlawful call on your company's behalf after the above-mentioned conversation, what processes were breached, if any, that had been put in place since the complaint was given to you by plaintiff?

**ANSWER:**

Objection. This interrogatory asserts legal conclusions and alleges facts that have not been established.  Without waiving the objection, I emphatically deny ever speaking with the plaintiff. I am also unaware of any unlawful calls made to the plaintiff. Finally, I was not involved in CAS's marketing efforts, and was not charged with compliance of any "processes."

8.      Defendants state that Mr. Logan was not represented as anything other than CFO and had no responsibility for telemarketing practices. Why, then, was Mr. Logan included in the phone call with Mr. Betta for Plaintiff's complaint about the telemarketing violations, and why was Plaintiff subsequently referred (and transferred) to Mr. Logan by CAS employees when he followed up with an additional complaint about telemarketing?

**ANSWER:**

Objection. This interrogatory alleges facts that have not been established.   Without waiving the objection, I emphatically deny that any phone conversation took place between myself and the plaintiff.  Upon information and belief, the plaintiff never spoke with Charles Betta.

**II.**

1.      In the first set of questions, you were asked how many contacts were made on you and your company's behalf by your contractors to Texas area phone numbers. Your answer stated that you did not call anyone. Your answer was incomplete: Based on the reports that your vendors gave you, how many calls did they make to Texas area phone number while generating leads for your company?

**ANSWER:**

The defendant objects to this interrogatory as irrelevant and not calculated to establish jurisdiction over the defendant.   The defendant denies that the Court has jurisdiction over the defendant, a New Jersey resident, based on alleged telephone calls to plaintiff from an independent vendor that was not a Texas resident.  Without waiving the objection, I did not receive a report from the vendor listing who was called.  I don't know how many calls were made.  I was not involved in that aspect of CAS's business.

2.      In your first set of answers, you indicated that you do not have documents which would enable you to answer the question as to how many clients you had in Texas during the years in question.  Are you contending that your client list and any backups thereof were lost or destroyed in the intervening time between then and now?

**ANSWER:**

Objection.  My answers to interrogatories simply stated that I don't know how many clients. In my role as CFO I was not charged with client development.

3.      If so, when were such records destroyed and for what purpose other than spoliation of evidence for the various lawsuits active against your company during this period?

**ANSWER:**

Objection.  This interrogatory presumes facts not established.  It is also beyond the Court's Order limiting interrogatories to whether the plaintiff can pierce the corporate veil to establish personal jurisdiction. Defendant also objects to any allegation of "spoliation of evidence" as defendant has not been requested to keep any records.  Furthermore, this defendant has not destroyed any records in an effort to conceal evidence.


**III.     Document Request**

The following documents are requested to establish the veracity of the answers given to the above questions.  They should be delivered electronically to the plaintiff through email or a download service if larger than 5 mb in size.

Format: Electronically stored tables or data should be delivered in CSV format.  Other text documents should be in a text format or searchable pdf format.  Scanned documents should be in a pdf format.  An index should be included to list which files comply with which request.

### A. **Re-request**

1.      A copy of the IRS form 1065 and K-1 filed by the corporation for 2015, 2016, 2017 and 2018 to establish ownership.

Your first set of replies stipulates as to Mr. Betta's ownership and claims that this moots the request. However, you have provided no documentation regarding the alleged ownership of Mr. Logan, only issued a statement in denial. In addition, if Mr. Betta is the sole owner (or the defendants together are the sole owners), this has implications to the unity of purpose and ownership plank of the corporate veil. Therefore, this request is not moot, and it is demanded again. (Additionally, your general and specific objections are not timely.)

If the company has or had only one owner or had a different filing structure than would require a form 1065, then any tax form which was filed with the IRS that establishes the ownership percentages may be substituted for the above.

### **ANSWER:**

I reiterate that I am not, and have never been an owner of CAS. Furthermore, I did not file a K-1 or 1065 on my behalf. The K-1 is filed by owners of pass through business entities. Form 1065 is also inapplicable to me. I am not an owner. With that said, I have never owned CAS. I have only worked as an employee.

### **B.**     **Follow Up Requests**

Additionally, defendants attached a document purporting to be a compliance contract with their telemarketers. However, it does not indicate what company it is for, and can at most encompass one of the two companies specified s doing lead generation on the company's behalf.

Therefore, as a follow up, Plaintiff requests:

2.      Any other contracts or documentation provided to you or your company by the aforementioned lead generation firms regarding TCPA Compliance.

### **ANSWER:**

I was not charged with CAS' marketing and did not oversee this aspect of the business. Upon information and belief, the compliance agreement was signed by a representative of Pacific Marketing. Channel Growth also executed the same agreement. The defendant does not have a copy.

3.      Any documentation you will rely on to validate claims that the firms were vetted for compliance before and while using them.

**ANSWER:**

Objection. Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court has personal jurisdiction over the defendant because of an alleged breach of the corporate veil. Without waiving the objection, I was not charged with CAS' marketing and did not oversee this aspect of the business.

4.      Any documentation you will rely on to validate claims that you addressed complaints of illegal telemarketing with the lead generation firms.

**ANSWER:**

Objection. Whether the defendant has any documents to validate that it took any measures to address complaints has nothing to do with whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction.   The defendant further objects to this question in that it presupposes facts that have not been established.   Defendant further objects to the interrogatory as it impermissibly alleges a legal conclusion that has not been established.   The defendant further object to the term "illegal telemarketing" as vague and overbroad and unestablished. Without waiving these objections, this defendant has not made a claim in these answers to interrogatories the he addressed complaints of "illegal telemarketing."   I deny commission of any illegal telemarketing.  I am also unaware of any vendor committing any illegal telemarking on CAS' behalf. Therefore, I do not possess any documentation.

5.      A list of all clients the company had in the period 2015-2016, showing each client's state.

Relevance to limited discovery: Documents 2-4 will help to establish (or not) any claims made by defendants that they acted in good faith to remedy their prior and ongoing alleged violations of the telemarketing law, or whether they continued to allow illegal practices on their (or their company's behalf) after being put on notice by the prior lawsuits in general and by plaintiff's first complaint specifically, as per the plaintiff's argument for piercing the corporate veil.

The last document was obvious bearing on the jurisdictional questions.

**ANSWER:**

Objection. This interrogatory is overbroad and unduly burdensome.   Moreover, the question does not address whether the defendant is subject to personal jurisdiction in the State of Texas but reaches far beyond Texas.   Furthermore, the question calls for a vast amount of information that the defendant does not have the ability to gather.   Without waving these objections, I was not charged with client development and I don't have a list.

The defendant further objects to the manner in which plaintiff attempts to justify his request for documents 2-4.  Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court has jurisdiction over the defendant.  The defendant further

objects to these requests in that they presuppose facts that have not been established. Defendant further objects to the requests as they impermissibly reach legal conclusions that have not been established.

## VERIFICATION

Dan Logan deposes and says:

Deponent is a defendant in the within action.  Deponent has read the foregoing responses to Plaintiff's Interrogatories and knows the contents thereof, that the same are true to deponent's knowledge or information available to deponent, except as to those matters stated to be alleged upon information and belief, and as to those matters stated upon information and belief, deponent believes them to be true.

BY: _____

Dan Logan

Dated: 4-25-19.