# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

PAUL R.F. SCHUMACHER,                          )
        Plaintiff,                          )
                                           )
v.                                             )    Case No. 4:18-CV-00436
                                           )
CAPITAL ADVANCE SOULTIONS                      )    **DEFENDANT CHARLES BETTA'S**
LLC, CHARLES BETTA AND DAN                     )    **ANSWERS TO INTERROGATORIES**
LOGAN,                                         )
        Defendants.                         )

TO:    Paul R.F. Schumacher

Defendant Charles Betta, by and through his attorneys, Kent & McBride, P.C., hereby provides Answers to Plaintiff's Interrogatories as set forth below. These responses are made without waiver of, and with preservation of, the following:

1.    All objections as to competency, relevancy, materiality, privilege and admissibility of the responses and the subject matter thereof as evidence for any purposes in any further proceeding in this action (including the trial of this action) and any other action;

2.    The right to object to the use of any such responses, or the subject matter thereof, on any ground in any further proceeding of this action (including the trial of this action) and any other action;

3.    The right to object on any ground at any time to a demand or request for further response to plaintiff's interrogatories, or any other interrogatories or document requests, or other discovery proceedings involving or relating to the subject matter of this controversy; and

4.    The right at any time to revise, correct, add to, supplement or clarify any of the responses contained herein.

5.    In the event any responses and/or documents are inadvertently produced by defendant which fall within the attorney-client and/or attorney work-product privilege, defendant shall not be deemed to have waived its privilege as to any such document or the information contained therein, or the right to the attorney-client or work-product privilege as to any other matter which arises during the course of this litigation or any subsequent proceeding.

## GENERAL OBJECTIONS

Defendant intends to abide by his obligation to produce the requested information and documents discoverable under the Court Rules governing the United States District Court for the Southern District of Texas, Houston Division. The specific objections described below are intended to clarify defendant's position with respect to each interrogatory. Accordingly, where applicable, defendant's answer to an interrogatory will include one or more of the following objections:

A.    Defendant objects to each interrogatory to the extent that it calls for information that would impose upon defendant a vexatious and undue burden on the ground that such interrogatory is oppressive and/or is intended to harass Defendant. [Objection on the grounds of "Undue Burden."]

B.    Defendant objects to each interrogatory to the extent that it is drafted in such a manner that it is overly broad in that the interrogatory purports to seek the disclosure of information or data which is unduly burdensome to obtain and/or can be obtained from other documentation more readily available and without causing unnecessary expense and hardship to defendant or seeks information not relevant to this proceeding as defined in subpart "C" below. [Objection on the grounds of "Overbreadth."]

C.    Defendant objects to each interrogatory to the extent that it seeks the disclosure of documents, information or data which is irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. [Objection on the grounds of "Irrelevancy."] Objections on the grounds of Irrelevancy are specifically interposed as to all interrogatories which seek the disclosure of information beyond the scope of and not relevant to the allegations contained in plaintiff's Complaint nor reasonably calculated to lead to the discovery of evidence admissible with respect to such allegations.

D.    Defendant objects to each interrogatory to the extent that it requests the disclosure of information or documents incorporating or containing information which is protected by the attorney-client privilege, the work-product privilege or other privileges, or is material prepared in anticipation of litigation, upon the ground that the privileged matter is exempt from discovery, and trial preparation material may only be discoverable upon satisfaction of the prerequisites delineated in the Rules of Court, which prerequisites have not been satisfied. [Objection on the grounds of "Privilege."]

E.    Defendant objects to each interrogatory to the extent that it is vague, ambiguous or otherwise lacks sufficient precision or particularity to permit formulation of a response. [Objection on the grounds of "Vagueness."]

F.    Defendant objects to each interrogatory to the extent that it requires defendant to obtain information from or with respect to persons or entities over whom defendant has no control. [Objection on the grounds of "Control."]

G.    Defendant objects to each interrogatory to the extent that it seeks disclosure of information already known or available to plaintiff or documentation in plaintiff's possession which may be obtained more readily by plaintiff and without subjecting Defendant to

unreasonable burden and expense.  [Objection on the grounds of "Availability."]

H.     Defendant objects to each interrogatory to the extent it seeks information that is confidential, trade secret, subject to privacy rights or otherwise proprietary in nature, the disclosure of which would or could harm defendant.  [Objection on the grounds of "Proprietary Information."]

I.     Defendant objects to the manner in which plaintiff assorts and labels the interrogatory sections.   The defendant further objects to the manner in which the plaintiff defines the terms culpability, benefit and jurisdiction. Defendant does not concede he is culpable or received a benefit as defined by the plaintiff or under the law applicable to the issues in this case.  Furthermore, defendant maintains he is not subject to jurisdiction of this court.

## DEFENDANT CHARLES BETTA'S ANSWERS TO INTERROGATORIES

I.

1.     Were you aware that a prerecorded message was being used to generate leads or telemarket either by your company or other associates, or on your behalf?

### ANSWER:

**I am not aware of any prerecorded messages on my behalf.  I am aware that CAS selected third-party lead generation specialists to forward to CAS business to business leads on an ala carte basis provided that they followed TCPA and state regulations regarding telemarking.   CAS did not control the vendors or determine what businesses they called.  The vendors were specifically instructed to comply with all aspects of the TCPA and state regulations regarding telemarketing.  Vendors were required to sign an agreement to comply with federal and state regulations. See attached.**

2.     List the venue, case number, and resolution of each federal lawsuit brought against you or the company since 2010 until 2015 for telemarketing violations:

### ANSWER:

**The defendant objects to this request as overbroad and beyond the scope of jurisdictional discovery. The fact that a lawsuit was filed against the defendants and the disposition of that lawsuit does not address the issue of whether this court has personal jurisdiction over the defendants in this case. Without waving the objection, the defendant is aware that in 2015 CAS was sued in:**

***Ryan Alcorn v. Capital Advance Solutions* US District Court for the Southern District of Texas 15-cv-02369. A default judgment was entered. The matter was transferred to US District Court in New Jersey 1:7 MC-8 NLH. The matter was ultimately settled without any admission of wrongdoing. I was not a party to this lawsuit.**

3.     After lawsuits were filed, which served beyond any doubt to make you aware of the rules you had been violating, what steps were taken or procedures implemented to prevent violations of those rules in the future, including: failing to screen out cell phones, use of

prerecorded voice, the use of an ATDS as defined by the FCC, or calling numbers on the national or state do not call registries:

**ANSWER:**

**Defendant objects to this question as it assumes facts not established and states legal conclusions. Without waiving the objection, I deny that I violated any rules. In order to conduct business with CAS, an independent vendor was instructed and contracted to comply with TCPA and state regulations regarding telemarketing. CAS was assured by the vendor that it would take the necessary measures to insure compliance, including proper screening of potential leads.**

4.   Describe how your marketing selection and preparation process has changed from or is essentially the same as that described in the *Rinky Dink* deposition (previously submitted by this court), which details Mr. Betta's personal involvement which state target selection and a lack of compliance procedures.

**ANSWER:**

**CAS stopped using the vendor Voiceblaze. CAS switched to using outside independent vendors that assured CAS they would comply with TCPA and state regulations concerning telemarketing. Furthermore, the vendor was required to contact only businesses. After establishing a lead that was obtained in compliance with the TCPA and state regulations, the vendor would forward the call to CAS.**

5.   Has Mr. Betta or Mr. Logan at any time represented Mr. Logan as being responsible for legal compliance, telemarketing issues, or referred him as a legal officer for the company?

**ANSWER:**

**Mr. Logan was the CFO for CAS. I have not represented him to be anything other than this.**

6.   What role(s) did Mr. Betta fill in the company during 2015-2016?

**ANSWER:**

**I was President of the Company.**

7.   What role(s) did Mr. Logan fill in the company during 2015-2016?

**ANSWER:**

Mr. Logan was employed as the CFO. As CFO he was responsible for financial well-being of the company by forecasting finances and budgets. He oversaw accounting, finance and taxation issues. He planned the financial future of the company.

## II.

1. List all of the above suits that the company failed to respond to, failed to appear for, or which were allowed to fall into default judgment.

   **ANSWER:**

   Defendant objects to this interrogatory as being overbroad and not calculated to elicit information regarding personal jurisdiction and whether the corporate veil was breached. Without waiving the objection, I am aware that CAS was sued for TCPA violations. I don't know all of the cases that CAS failed to appear in or defaulted. The company defended some TCPA claims and settled others. I recall that CAS defaulted in the *Redman* and *Alcon* cases. The Alcorn case was eventually resolved by settlement. I am also aware of *Abante Rooter and Plumbing Inc. v. CAS* 4-18-cv-01762 in California. CAS has not appeared in that matter. I don't believe a judgment has been entered. I am aware that a default was entered in the case of *Jackson v. CAS* DJ-026297-17 in New Jersey. This matter was settled.

2. List all sanctions levied against you or the company for the company failing to respond to subpoenas or judgments, as well as any outstanding judgments against you or the company which have not been satisfied.

   **ANSWER:**

   I have not received any sanctions. It is my understanding that CAS was required to pay attorney fees associated with opposing counsel's efforts to obtain discovery via subpoena in the *Redman* matter. A judgment was entered for some of the counsel fees. I am unable to recall any other judgments related to TCPA matters that have not been satisfied.

3. Did. Mr. Betta own a percentage of the company or its profits during 2015, 2016, or onward?

   **ANSWER:**

   Yes.

4. Other than base salary, did Mr. Betta profit from the company's activities or dissolution either through profit sharing, bonuses, or equity ownership, including stock or partnership options:

   **ANSWER:**

   **No.**

5. Did Mr. Logan own a percentage of the company or its profits during 2015, 2016, or onward:

   **ANSWER:**

   **No.**

6. Other than base salary, did Mr. Logan profit from the company's activities or dissolution either through profit sharing, bonuses, or equity ownership, including stock or partnership options:

   **ANSWER:**

   **No.**

7. List the legal name and address and ownership percentage of every person who was part owner of the company in 2015, 2016, 2017 and 2018, until dissolution.

   **ANSWER:**

   **Defendant objects to this interrogatory as being irrelevant and not calculated to elicit information regarding whether the court has personal jurisdiction over the defendants in this case, and whether these defendants breached the corporate veil. Without waiving the objection, I was an owner of the business in 2015, 2016, 2017 and 2018. Dan Logan was not an owner of the business.**

8. List the legal name and address of every person who benefited financially from the profits made by the company in the years 2015-2016 or from its dissolution.

   **ANSWER:**

The defendant objects to this interrogatory as overbroad and vague. The defendant also objects to the extent this interrogatory seeks information unrelated to the defendants sued in this case. Without waiving the objection, I did not receive any benefit from the company other than to receive a salary. I am not aware of anyone else who received a benefit. The company has not yet filed for dissolution.

9. What is the current state of the company's dissolution, and what was its status when this lawsuit was filed?

**ANSWER:**

The company shut down in April of 2017. At that time the entire Atlantic City office was closed. All company employees were laid off. The company has not yet filed for dissolution.

## III.

1. How many contacts (calls, letters, other means of direct contact) were made by Capital Advance employees or direct contractors to Texas area phone numbers or with Texas addresses during the years 2015-2016? (If more than a hundred, an estimate to the nearest order of magnitude will suffice).

**ANSWER:**

I did not call or contact anyone in Texas, nor did I ask anyone to contact anyone in Texas on my behalf. CAS employees did not call Texas residents to generate business. Third-party lead generation specialists called Texas businesses and forwarded CAS business to business leads on an ala carte basis. The outside vendor assured CAS that it complied with the TCPA and local telemarketing rules. The vendor implemented technology and other measures to screen those it called.

2. How many customers did the business have during the years 2015-2016 in the state of Texas?

**ANSWER:**

I don't know the answer to this question, nor do I possess documents that would enable me to provide this information.

3. How many contacts (as above) were made by other associates to Texas area phone numbers or with Texas addresses during the years 2015-2016? (If more than a hundred, an estimate to the nearest order of magnitude will suffice).

   **<u>ANSWER:</u>**

   **I don't know the answer to this question, nor do I possess documents that would enable me to provide this information.**

4. Your company's business and marketing have been previously described by Mr. Betta as being in all 50 states.  Had that changed as of 2015 or 2016 to specifically exclude Texas?

   **<u>ANSWER:</u>**

   **No.**

5. Did you specifically include or exclude (or neither) the state of Texas in your marketing area/strategy either internally or for your lead generation or telemarketing firms?

   **<u>ANSWER:</u>**

   **CAS did not specifically exclude the State of Texas.  However, CAS engaged in several different methods of marketing, including: mailers, referrals, internet and radio.  A vendor that provided CAS with a lead through telemarketing was required to do so in accordance with TCPA and state regulations.**

6. List every state in which your company registered as a business with telemarketing, as required by Texas, Florida and others.

   To enable us to serve subpoenas to verify or refute your claims about no business in Texas:

   1. State the name and address of each lead generation or telemarketing firm that made calls on the company's behalf or handed off leads to the company via telephone during the period 2015-2016.
   2. State the name and address of each telephone service provider that your company used for outgoing calls during the period 2015-2016 and the account number for each account.
   3. If any other method was used to make calls without a specific provider (such as VOIP code), describe the nature of the method and whether it was internally or externally developed, and by whom.

<u>ANSWER:</u>

I don't know the answer to this question.  The third-party vendor was required to insure that all leads forwarded to CAS were done in accordance with TCPA and state regulations.

<u>Texas</u>

1.   CAS hired third party lead generation specialists to forward it business to business leads on an ala carte basis provided that they followed the TCPA and local state rules regarding telemarketing.  I am aware of two such vendors, Channel Growth located at 1525 Lakeville Dr. Ste 121 Houston, TX 77339;  and First Pacific Marketing located at 1024 Bayside Dr. Suite 403 New Port Beach CA 92660.

2.   CAS' telephone carrier was the American Telephone Company with a mailing address of PO Box 1465. CAS did not solicit business from the phoneline associated with this account. CAS was referred calls from third party vendors, Channel Growth and Pacific Marketing.  CAS does not possess the phone records for these third-party vendors.

3.   I don't know the answer to this question.

## VERIFICATION

Charles Betta deposes and says:

Deponent is a defendant in the within action. Deponent has read the foregoing responses to Plaintiff's Interrogatories and knows the contents thereof, that the same are true to deponent's knowledge or information available to deponent, except as to those matters stated to be alleged upon information and belief, and as to those matters stated upon information and belief, deponent believes them to be true.

BY: _____
        Charles Betta

Dated: 4/12/19.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

PAUL R.F. SCHUMACHER,　　　　　　）

　　　　　Plaintiff,　　　　　　　　　　）

　　　　　　　　　　　　　　　　　　）

v.　　　　　　　　　　　　　　　　　）　　　Case No. 4:18-CV-00436

　　　　　　　　　　　　　　　　　　）

CAPITAL ADVANCE SOULTIONS　　　）　　**DEFENDANTS' RESPONSE**

LLC, CHARLES BETTA AND DAN　　　）

LOGAN,　　　　　　　　　　　　　　）　　**TO REQUEST FOR DOCUMEMNTS**

　　　　　Defendants.　　　　　　　　）

TO:　　Paul R.F. Schumacher

　　　　Defendant Charles Betta and Dan Logan, by and through his attorneys, Kent & McBride, P.C., hereby provide Answers to Plaintiff's Request for Documents as set forth below.  These responses are made without waiver of, and with preservation of, the following:

1.　　All objections as to competency, relevancy, materiality, privilege and admissibility of the responses and the subject matter thereof as evidence for any purposes in any further proceeding in this action (including the trial of this action) and any other action;

2.　　The right to object to the use of any such responses, or the subject matter thereof, on any ground in any further proceeding of this action (including the trial of this action) and any other action;

3.　　The right to object on any ground at any time to a demand or request for further response to plaintiff's interrogatories, or any other interrogatories or document requests, or other discovery proceedings involving or relating to the subject matter of this controversy; and

4.　　The right at any time to revise, correct, add to, supplement or clarify any of the responses contained herein.

5.　　In the event any responses and/or documents are inadvertently produced by defendant which fall within the attorney-client and/or attorney work-product privilege, defendant shall not be deemed to have waived its privilege as to any such document or the information contained therein, or the right to the attorney-client or work-product privilege as to any other matter which arises during the course of this litigation or any subsequent proceeding.

## GENERAL OBJECTIONS

Defendant intends to abide by his obligation to produce the requested information and documents discoverable under the Court Rules governing the United States District Court for the Southern District of Texas, Houston Division. The specific objections described below are intended to clarify defendant's position with respect to each interrogatory. Accordingly, where applicable, defendant's answer to an interrogatory will include one or more of the following objections:

A.     Defendant objects to each interrogatory to the extent that it calls for information that would impose upon defendant a vexatious and undue burden on the ground that such interrogatory is oppressive and/or is intended to harass Defendant. [Objection on the grounds of "Undue Burden."]

B.     Defendant objects to each interrogatory to the extent that it is drafted in such a manner that it is overly broad in that the interrogatory purports to seek the disclosure of information or data which is unduly burdensome to obtain and/or can be obtained from other documentation more readily available and without causing unnecessary expense and hardship to defendant or seeks information not relevant to this proceeding as defined in subpart "C" below. [Objection on the grounds of "Overbreadth."]

C.     Defendant objects to each interrogatory to the extent that it seeks the disclosure of documents, information or data which is irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. [Objection on the grounds of "Irrelevancy."] Objections on the grounds of Irrelevancy are specifically interposed as to all interrogatories which seek the disclosure of information beyond the scope of and not relevant to the allegations contained in plaintiff's Complaint nor reasonably calculated to lead to the discovery of evidence admissible with respect to such allegations.

D.     Defendant objects to each interrogatory to the extent that it requests the disclosure of information or documents incorporating or containing information which is protected by the attorney-client privilege, the work-product privilege or other privileges, or is material prepared in anticipation of litigation, upon the ground that the privileged matter is exempt from discovery, and trial preparation material may only be discoverable upon satisfaction of the prerequisites delineated in the Rules of Court, which prerequisites have not been satisfied. [Objection on the grounds of "Privilege."]

E.     Defendant objects to each interrogatory to the extent that it is vague, ambiguous or otherwise lacks sufficient precision or particularity to permit formulation of a response. [Objection on the grounds of "Vagueness."]

F.     Defendant objects to each interrogatory to the extent that it requires defendant to obtain information from or with respect to persons or entities over whom defendant has no control. [Objection on the grounds of "Control."]

G.     Defendant objects to each interrogatory to the extent that it seeks disclosure of information already known or available to plaintiff or documentation in plaintiff's possession which may be obtained more readily by plaintiff and without subjecting

Defendant to unreasonable burden and expense.  [Objection on the grounds of "Availability."]

H.  Defendant objects to each interrogatory to the extent it seeks information that is confidential, trade secret, subject to privacy rights or otherwise proprietary in nature, the disclosure of which would or could harm defendant.  [Objection on the grounds of "Proprietary Information."]

I.  Defendant objects to the manner in which plaintiff assorts and labels the interrogatory sections.  The defendant further objects to the manner in which the plaintiff defines the terms culpability, benefit and jurisdiction.  Defendant does not concede he is culpable or received a benefit as defined by the plaintiff or under the law applicable to the issues in this case.  Furthermore, defendant maintains he is not subject to jurisdiction of this court.

## DEFENDANTS RESPONSE TO DOCUMENT REQUEST

The following documents are requested to establish the veracity of the answers given to the above questions.  They should be delivered electronically to the plaintiff through email or a download service if larger than 5 mb in size.

Format:  Electronically stored tables or data should be delivered in CSV format.  Other text documents should be in a text format or searchable pdf format.  Scanned document should be in a pdf format.  An index should be included to list which files comply with which request.

1.  A copy of the IRS form 1065 and K-1 filed by the corporation for 2015, 2016, 2017 and 2018 to establish ownership.

**ANSWER:**

**In order to satisfy plaintiff's demand to establish ownership, Charles Betta stipulates that he was an owner of CAS in  2015, 2016, 2017 and 2018 as verified in his answers to plaintiff's interrogatories.  Defendant, Dan Logan verified in his answers to interrogatories that he is not an owner.  Given these admissions, the defendant objects to this demand as moot.**

2.  A copy of the dissolution papers (if any) filed with the secretary of state.

**ANSWER:**

**No papers have been filed at this time.**

3.  A call log contained a list of calls including date and time to any number in the (979) area code during 2015 and 2016, by the company or its associates.  To preserve privacy, the exact phone number may be redacted, so long as it is clear which area code they are to.

**ANSWER:**

**The defendants do not have the requested documents.  CAS relied on independent third party vendors to provide leads in accordance with TCPA and state regulations.  CAS does not possess the phone records for these vendors.**

4. A call log containing a list of calls including date and time to 979-575-0107 during 2015 and 2016.

<u>ANSWER:</u>

**The defendants are not in possession of any call log.  CAS would not have called anyone in the area code to generate a lead.  CAS relied on independent third -party vendors to provide leads.  CAS does not possess the records for these vendors.**

5. A list of all payments made to Mr. Betta by the company for any reason, with dates and reasons for payment during 2015 or 2016, or for dissolution or equity distribution any time during or after 2015.

<u>ANSWER:</u>

**Defendants object to this interrogatory as it overbroad, unduly burdensome and because it requests information and documentation beyond the scope of the jurisdictional limits imposed by the Court's Order.  Without waiving the objection, Mr. Betta received a salary during 2015 and 2016 for which he was paid on a biweekly basis.  Mr. Betta did not receive an equity distribution or distribution for dissolution after 2015.**

6. A list of all payments made to Mr. Logan by the company for any reason, with dates and reasons for payment during 2015 or 2016, or for dissolution or equity distribution any time during or after 2015.

<u>ANSWER:</u>

**Defendants object to this interrogatory as it overbroad, unduly burdensome and request it requests information and documentation beyond the scope of the jurisdictional limits imposed by the Court's Order.  Without waiving the objection, Mr. Betta received a salary during 2015 and 2016 for which he was paid on a biweekly basis.  Mr. Betta did not receive an equity distribution or distribution for dissolution after 2015.**

Respectfully submitted.

**KENT & MCBRIDE, P.C.**

By: _____

Christopher D. Devanny, #3719

One Arin Park

1715 Highway 35, Suite 305

Middletown, New Jersey 07748

Phone: 732-326-1711

Email: cdevanny@kentmcbride.com

*Attorney for Defendant, Charles Betta*

Dated: April 13, 2019

## Sales Vendor ADAD Compliance

Capital Advance Solutions LLC (CAS) feels it is important to follow all of the laws related to marketing to potential clients. There exist legal restrictions or prohibitions on some forms of advertising, notably, but not limited to, fax advertising, email solicitation, and automated dialers/announcing devices (ADAD). As a lead vendor to CAS you and your company have an obligation to familiarize yourselves with, keep updated on, and comply with the various laws surrounding the use of automated dialers/announcing devices. These laws vary in scope and severity based on jurisdictional differences.

We have summarized the laws and regulations of the United States and each of the individual States pertaining to the making of business-to-business sales calls utilizing automated dialing and announcing devices ("ADAD"). It is extremely important that you have the ability to segment your files to ensure compliance. Remember, your organization, or you personally, will be held liable, and hereby agree to indemnify and hold CAS, its officers, and employees, harmless paying all cost including CAS legal fees for non-compliance with Federal, State, or local law. .

ADAD's have been interpreted to include any technology with the capacity to dial random or sequential numbers. ADAD's are regulated federally for calls to consumers. However, there are significant Federal restrictions on the use of ADAD technology for business-to-business calls as well, (See the Telephone Consumer Protection Act, 47 U.S.C. §227 (TCPA)). The TCPA prohibits and renders unlawful the use of ADAD to call any mobile phone numbers without the called party's prior consent. Furthermore, many states have enacted regulatory frameworks, which seek to protect their residents (often businesses and consumers) from the annoyance of ADAD calls and to prevent ADAD-generated calls from impeding telephone service.

CAS recommends that you seek legal advice pertaining to the operation of any ADAD equipment. This document is not intended as a replacement of sound legal advice and the use of ADAD equipment is entirely your decision and responsibility.

### Automated Dialer and Announcing Device (ADAD) Compliance
Please see the attached chart providing detail as to the exact restrictions each individual State imposes upon commercial ADAD calls. However, a brief summary follows:

- In the following states, ADAD-delivered business-to-business sales calls are **expressly forbidden** (whether according to criminal statutes or civil regulations): **Arkansas** (criminal), **Maryland** (criminal), **Mississippi** (civil), **North Carolina** (civil), **Washington** (civil) and **Wyoming** (criminal).

- The following states **allow business-to-business ADAD calls without restriction:** **Alabama, Alaska, Arizona, Connecticut, Delaware, Florida, Georgia, Hawaii, Kansas, Louisiana, Missouri, Ohio, Oregon, South Carolina, South Dakota, Texas, Vermont, Virginia and West Virginia.**

- Several states impose various **time, place and manner restrictions.** These types of restrictions tend to limit the hours during which ADAD calls can be made (typically between 9 a.m. and 9 p.m.), require a short period of time after hang-up for the call to be disconnected (the range tends to be between five and thirty seconds) and mandate that the name and contact information of the business for whom the call is being made be provided at the start of the call. The states with **some combination of these fairly manageable ADAD regulations** are the following: **Idaho, Maine, Massachusetts, Nebraska, Nevada, New York and Rhode Island.**

Page 1 of 3

Initial(s)

- Two states require that the **operator of ADAD equipment register with, or obtain a permit** from, the state.  These states are:  **New Hampshire and Tennessee.**

A number of states have imposed onerous restrictions upon those businesses that attempt to solicit sales through the use of business-to-business ADAD calls.  Some of these states require that live operators introduce the recorded call, that ADAD calls can only be made to businesses with whom the caller has a prior relationship or has otherwise consented to receive ADAD calls, and that the ADAD equipment only operate while it is attended.

- The following states require that a **live operator introduce an ADAD call**, or otherwise be available during the call:  **California, Indiana and Iowa.**

- Three states require that ADAD calls must be **introduced by a live operator unless the recipient has previously consented to receiving such calls:  New Jersey, North Dakota and Oklahoma.**

- A number of states only allow ADAD calls to be made if there is **a prior business relationship between the recipient and the caller:** Colorado (provided the recipient has also consented to the ADAD calls), **District of Columbia, Illinois, New Mexico and Utah.**

- **Express consent** is required to be given by the recipient before ADAD calls can be made to businesses in the following states:  **Michigan, Minnesota, Montana, and Wisconsin.**

- One state requires that ADAD **equipment be attended:  Kentucky.**

**Federal Prohibitions:**   Originally enacted in 1991 to protect consumers from growing numbers of unregulated and harassing telemarketing calls and faxes, the TCPA regulates calls or transmissions made using an automatic telephone dialing system (ATDS), as well as certain artificial or prerecorded voice calls. Under the TCPA and ATDS is any electronic device used to automate or facilitate mass communications with consumers.

With limited exceptions, the TCPA prohibits businesses from making any "call" to a consumer's mobile phone without the customer's "prior express written consent" using ATDS, or artificial or prerecorded voices. The TCPA has been interpreted to extend too many modern methods of communication, including text messages and other applications that allow or facilitate contact with consumers. **Therefore, it is imperative that an ATDS must not be used to place telemarketing calls, or text messages to mobile phones, or devices,** as these are acts that potential violate the TCPA, unless you have and can provide that customer's prior express written consent that is no more than one year old.

Penalties for violations of the TCPA uncapped statutory damages range from $500 to $1,500 per violation, and potential class action litigation with exposure in millions of dollars.

<u>Indemnification and hold harmless</u>

By signing below, you represent that you, and your company, is fully compliant with the foregoing and will not violate either Federal or State law in providing marketing and sales lead services to CAS. You represent that your company obtained every sales lead provided to CAS in full compliance with both Federal and State Law.

You acknowledge that failure to comply with the stated regulations will result in termination of your agreement with CAS. You agree that if either CAS, its officers, or employees is required to defend a lawsuit, or is held liable because of you, or your company's, violation of State, or Federal Law, you and your Company agree

Initial(s)

to indemnify and hold harmless CAS, its officers and employees. This shall include paying all costs to defend such action, inclusive of all legal fees, and for any judgment rendered if such defense is unsuccessful, or an amount required settling such lawsuits.

Please acknowledge receipt and understanding of the above:

_____
Signature

_____
Print Name

_____
Date

Initial(s) _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PAUL R.F. SCHUMACHER,                      )
                                           )
         Plaintiff,                        )
                                           )
v.                                         )     Case No. 4:18-CV-00436
                                           )
CAPITAL ADVANCE SOULTIONS                  )     **DEFENDANT CHARLES BETTA'S**
LLC, CHARLES BETTA AND DAN                 )     **ANSWER TO PLAINTIFF'S SECOND**
LOGAN,                                     )     **DOCUMENT REQUEST AND**
                                           )     **INTERROGATORIES**
         Defendants.                       )

TO:   Paul R.F. Schumacher

      Defendant Charles Betta, by and through his attorneys, Kent & McBride, P.C., hereby
provides Answers to Plaintiff's Second Document Request and Interrogatories as set forth below.
These responses are made without waiver of, and with preservation of, the following:

1.      All objections as to competency, relevancy, materiality, privilege and admissibility of the
responses and the subject matter thereof as evidence for any purposes in any further proceeding
in this action (including the trial of this action) and any other action;

2.      The right to object to the use of any such responses, or the subject matter thereof, on any
ground in any further proceeding of this action (including the trial of this action) and any other
action;

3.      The right to object on any ground at any time to a demand or request for further response
to plaintiff's interrogatories, or any other interrogatories or document requests, or other
discovery proceedings involving or relating to the subject matter of this controversy; and

4.      The right at any time to revise, correct, add to, supplement or clarify any of the responses
contained herein.

5.      In the event any responses and/or documents are inadvertently produced by defendant which fall within the attorney-client and/or attorney work-product privilege, defendant shall not be deemed to have waived its privilege as to any such document or the information contained therein, or the right to the attorney-client or work-product privilege as to any other matter which arises during the course of this litigation or any subsequent proceeding.

## GENERAL OBJECTIONS

Defendant intends to abide by his obligation to produce the requested information and documents discoverable under the Court Rules governing the United States District Court for the Southern District of Texas, Houston Division. The specific objections described below are intended to clarify defendant's position with respect to each interrogatory. Accordingly, where applicable, defendant's answer to an interrogatory will include one or more of the following objections:

A.      Defendant objects to each interrogatory to the extent that it calls for information that would impose upon defendant a vexatious and undue burden on the ground that such interrogatory is oppressive and/or is intended to harass Defendant. [Objection on the grounds of "Undue Burden."]

B.      Defendant objects to each interrogatory to the extent that it is drafted in such a manner that it is overly broad in that the interrogatory purports to seek the disclosure of information or data which is unduly burdensome to obtain and/or can be obtained from other documentation more readily available and without causing unnecessary expense and hardship to defendant or seeks information not relevant to this proceeding as defined in subpart "C" below. [Objection on the grounds of "Overbreadth."]

C.      Defendant objects to each interrogatory to the extent that it seeks the disclosure of documents, information or data which is irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. [Objection on the grounds of "Irrelevancy."] Objections on the grounds of Irrelevancy are specifically interposed as to all interrogatories which seek the disclosure of information beyond the scope of and not relevant to the allegations contained in plaintiff's Complaint nor reasonably calculated to lead to the discovery of evidence admissible with respect to such allegations.

D.      Defendant objects to each interrogatory to the extent that it requests the disclosure of information or documents incorporating or containing information which is protected by the attorney-client privilege, the work-product privilege or other privileges, or is material prepared in anticipation of litigation, upon the ground that the privileged matter is exempt from discovery, and trial preparation material may only be discoverable upon satisfaction of the prerequisites

delineated in the Rules of Court, which prerequisites have not been satisfied. [Objection on the grounds of "Privilege."]

E.     Defendant objects to each interrogatory to the extent that it is vague, ambiguous or otherwise lacks sufficient precision or particularity to permit formulation of a response. [Objection on the grounds of "Vagueness."]

F.     Defendant objects to each interrogatory to the extent that it requires defendant to obtain information from or with respect to persons or entities over whom defendant has no control. [Objection on the grounds of "Control."]

G.     Defendant objects to each interrogatory to the extent that it seeks disclosure of information already known or available to plaintiff or documentation in plaintiff's possession which may be obtained more readily by plaintiff and without subjecting Defendant to unreasonable burden and expense. [Objection on the grounds of "Availability."]

H.     Defendant objects to each interrogatory to the extent it seeks information that is confidential, trade secret, subject to privacy rights or otherwise proprietary in nature, the disclosure of which would or could harm defendant. [Objection on the grounds of "Proprietary Information."]

I.     Defendant objects to the manner in which plaintiff assorts and labels the interrogatory sections.  The defendant further objects to the manner in which the plaintiff defines the terms culpability, benefit and jurisdiction.  Defendant does not concede he is culpable or received a benefit as defined by the plaintiff or under the law applicable to the issues in this case. Furthermore, defendant maintains he is not subject to jurisdiction of this court.

## DEFENDANT CHARLES BETTA'S ANSWERS TO PLAINTIFF'S SECOND DOCUMENT REQUEST AND INTERROGATORIES

**I.**

1.     In your first set of answers, you claimed that vendors were instructed and required to comply with all federal and state laws regarding telemarketing.  What steps, if any, were taken to vet the companies for a history of such violations, or for ongoing violations they had been committing?

     **ANSWER:**

Objection. Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court may retain personal jurisdiction.  Without waiving the objection, the defendant does not concede it had an obligation to "vet" a vendor.  The vendors represented themselves as marketing experts and assured compliance with the TCPA as well as applicable state laws regarding marketing. The vendors signed an agreement assuring compliance.  I was not aware of any violations.  Furthermore, I did not preside over the vendor selection.  This decision was delegated to CAS' Marketing Manager.  The vendor was to provide leads from qualified businesses.  The vendor determined what businesses to direct its marketing efforts to. CAS relied on the vendor to perform it services in accordance with state and local laws.

2.      Additionally, what processes, if any, were in place to audit and verify those company's compliance in their marketing or lead generation on behalf of CAS?

**ANSWER:**

Objection. Whether the defendant took any measures to audit a third-party vendor has nothing to do with whether the whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction.

3.      Were you aware that Pacific Marketing was sued by Missouri Attorney General for violating the state telemarketing laws and they were prohibited by a judgment in that case from marketing in Missouri prior to September 2015 (the date of the first known call to Plaintiff)?

**ANSWER:**

Objection. Whether the defendant was aware that Pacific Marketing was sued has nothing to do with has nothing to do with whether the whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction.  Furthermore, I am unaware of any phone call made on my behalf or on the behalf of CAS to the plaintiff.  Without waiving this objection, the answer is no.

4.      Were you aware that Pacific Marketing was the subject of a class action suit in January 2016 for violating federal telemarketing laws?

**ANSWER:**

Objection. Whether the defendant was aware that Pacific Marketing was sued has nothing to do with whether the whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction.  Without waiving this objection, the answer is no.

5.    If and when you became aware of these lawsuits, did you discontinue using that firm for your lead generation at that time or were they still actively marketing on your company's behalf when plaintiff received the calls in violation of the national Do Not Call Registry (among the other violations alleged)?

**ANSWER:**

Objection.  Whether the defendant was aware that Pacific Marketing was sued has nothing to do with whether the defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction.  Without waiving the objection, I was unaware of any lawsuits.  Furthermore, I emphatically deny that I called the plaintiff, or that anyone else called the plaintiff on my behalf or at my direction.   I further deny any knowledge of anyone calling the plaintiff on behalf of CAS.

6.    After plaintiff initially contacted you and described to Mr. Betta and Mr. Logan the nature of the violations in the calls he had received, what steps, if any, did you take to investigate and correct those alleged violations by the firm's telemarketers?

**ANSWER:**

Objection.  This interrogatory is predicated on event that did not occur.  I emphatically deny that I ever spoke to the plaintiff.

7.    As plaintiff received further unlawful call on your company's behalf after the above-mentioned conversation, what processes were breached, if any, that had been put in place since the complaint was given to you by plaintiff?

**ANSWER:**

Objection. This interrogatory assert legal conclusions and alleges facts that have not been established.     Without waiving the objection, I emphatically deny ever speaking with the plaintiff. I further deny denies that any unlawful calls were made to this plaintiff.

8.    Defendants state that Mr. Logan was not represented as anything other than CFO and had no responsibility for telemarketing practices.  Why, then, was Mr. Logan included in the phone call with Mr. Betta for Plaintiff's complaint about the telemarketing violations, and why was Plaintiff subsequently referred (and transferred) to Mr. Logan by CAS employees when he followed up with an additional complaint about telemarketing?

**ANSWER:**

Objection. This interrogatory alleges facts that have not been established. Without waiving the objection, I emphatically deny that any phone conversation took place between myself and the plaintiff. Upon information and belief, the plaintiff never spoke with Dan Logan.

**II.**

1.      In the first set of questions, you were asked how many contacts were made on you and your company's behalf by your contractors to Texas area phone numbers. Your answer stated that you did not call anyone. Your answer was incomplete: Based on the reports that your vendors gave you, how many calls did they make to Texas area phone number while generating leads for your company?

**ANSWER:**

The defendant objects to this interrogatory as irrelevant and not calculated to establish jurisdiction over the defendant. The defendant denies that the Court has jurisdiction over the defendant, a New Jersey resident, based on alleged telephone calls to plaintiff from an independent vendor, that was not a Texas resident. Without waiving the objection, as previously explained, the vendor placed calls in compliance with the TCPA and state laws. The vendor did not call anyone on my behalf. I, nor anyone else that I am aware of, ever called the plaintiff. The vendor did not provide me or CAS with a report for those it called. This defendant does not know how many calls the vendor made.

2.      In your first set of answers, you indicated that you do not have documents which would enable you to answer the question as to how many clients you had in Texas during the years in question. Are you contending that your client list and any backups thereof were lost or destroyed in the intervening time between then and now?

**ANSWER:**

No.

3.      If so, when were such records destroyed and for what purpose other than spoliation of evidence for the various lawsuits active against your company during this period?

Objection. This interrogatory presumes facts not established.  It is also beyond the Court's Order limiting interrogatories to whether the plaintiff can pierce the corporate veil to establish personal jurisdiction.  Defendant also objects to any allegation of "spoliation of evidence" as defendant has not been requested to keep any records.  Furthermore, this defendant has not destroyed and records in an effort to conceal evidence.

**ANSWER:**

**III.   Document Request**

The following documents are requested to establish the veracity of the answers given to the above questions.  They should be delivered electronically to the plaintiff through email or a download service if larger than 5 mb in size.

Format:  Electronically stored tables or data should be delivered in CSV format.  Other text documents should be in a text format or searchable pdf format.  Scanned documents should be in a pdf format.  An index should be included to list which files comply with which request.

**A.      Re-request**

1.       A copy of the IRS form 1065 and K-1 filed by the corporation for 2015, 2016, 2017 and 2018 to establish ownership.

Your first set of replies stipulates as to Mr. Betta's ownership and claims that this moots the request.  However, you have provided no documentation regarding the alleged ownership of Mr. Logan, only issued a statement in denial.  In addition, if Mr. Betta is the sole owner (or the defendants together are the sole owners), this has implications to the unity of purpose and ownership plank of the corporate veil.  Therefore, this request is not moot, and it is demanded again. (Additionally, your general and specific objections are not timely.)

If the company has or had only one owner or had a different filing structure than would require a form 1065, then any tax form which was filed with the IRS that establishes the ownership percentages may be substituted for the above.

**ANSWER:**

This defendant has already admitted ownership.  This defendant also attests that Dan Logan has never held an ownership interest in CAS.  The defendant refers the plaintiff to Mr. Logan's response to this interrogatory regarding ownership.

**B.     Follow Up Requests**

Additionally, defendants attached a document purporting to be a compliance contract with their telemarketers.  However, it does not indicate what company it is for, and can at most encompass one of the two companies specified s doing lead generation on the company's behalf.

Therefore, as a follow up, Plaintiff requests

2.      Any other contracts or documentation provided to you or your company by the aforementioned lead generation firms regarding TCPA Compliance.

**ANSWER:**

The compliance agreement was signed by a representative of Pacific Marketing.  Channel Growth also executed the same agreement.  The defendant does not have a copy.

3.      Any documentation you will rely on to validate claims that the firms were vetted for compliance before and while using them.

**ANSWER:**

Objection. Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court has personal jurisdiction over the defendant because of an alleged breach of the corporate veil.  Without waiving the objection, the vendors assured CAS that they were taking measure and using technology to insure compliance.

4.      Any documentation you will rely on to validate claims that you addressed complaints of illegal telemarketing with the lead generation firms.

**ANSWER:**

Objection. Whether the defendant has any documents to validate that it took measures to address complaints has nothing to do with whether defendant's alleged conduct pierces the corporate veil to establish personal jurisdiction.   The defendant further objects to this question in that it presupposes facts that have not been established. Defendant further objects to the interrogatory as it impermissibly alleges a legal conclusion that has not been established.  The defendant further object to the term "illegal telemarketing" as vague, overbroad and

unestablished. Without waiving these objections, this defendant has not made a claim in these answers to interrogatories the he addressed complaints of "illegal telemarketing." I deny commission of any illegal telemarketing. I am also unaware of any vendor committing any illegal telemarking on CAS' behalf. Therefore, I do not possess any documentation.

5.      A list of all clients the company had in the period 2015-2016, showing each client's state. Relevance to limited discovery: Documents 2-4 will help to establish (or not) any claims made by defendants that they acted in good faith to remedy their prior and ongoing alleged violations of the telemarketing law, or whether they continued to allow illegal practices on their (or their company's behalf) after being put on notice by the prior lawsuits in general and by plaintiff's first complaint specifically, as per the plaintiff's argument for piercing the corporate veil. The last document was obvious bearing on the jurisdictional questions.

**ANSWER:**

Objection. This interrogatory is overbroad and unduly burdensome. Moreover, the question does not address whether the defendant is subject to personal jurisdiction in the State of Texas but reaches far beyond Texas. Furthermore, the question calls for a vast amount of information that the defendant does not have the ability to gather.

The defendant further objects to the manner in which plaintiff attempts to justify his request for documents 2-4. Whether the defendant took any measures to vet a third-party vendor has nothing to do with whether the Court has jurisdiction over the defendant. The defendant further objects to these requests in that they presuppose facts that have not been established. Defendant further objects to the requests as they impermissibly reach legal conclusions that have not been established.

VERIFICATION

Charles Betta deposes and says:

Deponent is a defendant in the within action.  Deponent has read the foregoing responses to Plaintiff's Interrogatories and knows the contents thereof, that the same are true to deponent's knowledge or information available to deponent, except as to those matters stated to be alleged upon information and belief, and as to those matters stated upon information and belief, deponent believes them to be true.

BY: _____
       Charles Betta

Dated: 4/25/19.